Reuben H. Graver, Francis E. Graver and Ralph S. Graver, d/b/a Graver Brothers, Petitioners *v.* Pennsylvania Public Utility Commission, Respondent. Lehighton Water Authority, Intervenor.

Argued November 16, 1983, before Judges ROGERS, BARRY and BARBIERI, sitting as a panel of three.

*Roger N. Nanovic,* with him *George T. Dydynsky,* for petitioners.

*Robert P. Meehan,* Assistant Counsel, with him *Louise R. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*John Deutsch,* for intervenor.

OPINION BY JUDGE ROGERS, January 12, 1984:

This is the appeal of the developers of a residential subdivision served by a water authority created under the Municipality Authorities Act of 1945[1] from an order of the Public Utility Commission (PUC), dismissing, for lack of commission jurisdiction, their complaint that the authority had wrongfully disconnected water meters in residences located in their development with the purpose, apparently of charging the appellants, instead of the householders, for the water supplied. The appellant's subdivision is located outside the corporate limits of the municipality which created the water authority.

The question is: Does the PUC have jurisdiction to determine questions of the reasonableness of rates

---

[1] Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §301.

fixed or of the services provided by a municipal authority beyond the limits of the municipality which created it or are such questions committed to the exclusive jurisdiction of the court of common pleas of the county where the authority's project is located? Having concluded that the PUC correctly answered this question by declaring that the exclusive jurisdiction of such questions is vested in the common pleas courts, we will affirm the PUC's order.

Public utility regulation in Pennsylvania is presently provided by the Act of July 1, 1978, P.L. 598. Section 1 of that Act is the Public Utility Code, a codification[2] without substantial change of the previously existing provision for utility regulation, the Public Utility Law, Act of May 28, 1937, P.L. 1053. Section 2 of the Act of July 1, 1978, effected the repeal of the Public Utility Law. Both the new Public Utility Code and the repeal of the old Public Utility Law were effective 60 days from July 1, 1978.

The Public Utility Law, Act of May 28, 1937, P.L. 1053, defined a public utility as a "person or corporation" owning or operating utility services to the public (Section 2(17)). A corporation was defined as not including "municipal corporations" (Section 2(9)); but a "municipal corporation" was defined as including a "public authority" (Section 2(15)). Section 301 of the Public Utility Law provided that the rates of public utilities should generally be subject to PUC regulation; provided, that only service provided by a municipal corporation beyond its corporate limits should be subject to PUC regulation. In *State College Borough Authority v. Pennsylvania Public Utility Commission*, 152 Pa. Superior Ct. 363, 31 A.2d 557 (1943), the several statutory provisions just men-

---

[2] At 66 Pa. C. S. §§101-3315.

tioned were construed to mean that a municipal authority created under the Municipality Authorities Act of 1935, Act of June 28, 1935, P.L. 463, was subject to PUC regulation of its utility service with respect to activity beyond the corporate limits of the municipality which created it.

The Municipality Authorities Act of 1935 was repealed and replaced by the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§301-322. Section 4B(h) of the Act of 1945, 53 P.S. §306B(h) provides:

> Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service.

In *Rankin v. Chester Municipal Authority,* 165 Pa. Superior Ct. 438, 68 A.2d 458 (1949), the Superior Court declared that Section 4B(h) was enacted to negate the effect of the holding of *State College Borough Authority;* that Section 4B(h) is inconsistent with the provisions of the Public Utility Law construed in *State College Borough Authority;* that the Municipality Authorities Act of 1945 being the later enactment, impliedly repealed the inconsistent provisions of the Public Utility Law; and that for these reasons the courts of common pleas have exclusive jurisdiction of questions concerning the utility ser-

vices of municipal authorities beyond, as well as within, the limits of the municipality which created the authorities.

As noted, the Public Utility Law was repealed by the Act of July 1, 1978, P.L. 598, and replaced by the Public Utility Code. Section 301 of the repealed Public Utility Law which provided that public utility service furnished by a municipal corporation beyond its limits shall be subject to PUC regulation is now in the Public Utility Code at 66 Pa. C. S. §1501. The definitions of public utility, corporation and municipal corporations formerly at Sections 2(17), 2(9) and 2(15) of the Public Utility Law are now to be found in the new Code at 66 Pa. C. S. §102.

The appellant's thesis is that the repeal and reenactment in 1978 of these provisions in the code, construed in *State College Borough Authority* to vest jurisdiction in the PUC of municipal authorities activities beyond the limits of the municipalities of their creation, should be accepted as a legislative expression of rejection of the holding of *Rankin* that the effect of Section 4B(h) of the Municipality Authorities Act of 1945 was to vest exclusive jurisdiction in the courts of common pleas and of reversion to the rule of the *State College Borough Authority*. This thesis fails because Section 1962 of the Statutory Construction Act, 1 Pa. C. S. §1962, plainly and conclusively expresses a legislative will to just the opposite effect:

> Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred in such earlier statute are preserved and may be enforced.

Here, the Public Utility Law was repealed and its provisions at the same time were reenacted as the Public Utility Code in substantially the same terms. Hence the provisions of the earlier Public Utility Law were continued in active operation. These included the provisions upon which the appellant now relies, provisions which in *Rankin* were construed in the light of Section 4B(h) of the Municipality Authorities Act of 1945, no longer to vest jurisdiction in the PUC.

In *Miles Estate,* 272 Pa. 329, 116 A. 300 (1922) the Supreme Court was called upon to apply and interpret provisions of the Intestate Act of 1917, an assemblage in one group of the numerous statutory provisions dealing with intestate law, concerning which, it wrote:

When the statute under consideration is a general revision, the law as therein written will be deemed to be the same as it stood prior to the revision, unless we find from the statute itself, or its history, a clear intention to change it. In re Lis's Estate, 139 N.W. 300, 302, and cases there cited; . . . .

*See Bell v. Abraham,* 343 Pa. 169, 22 A.2d 753 (1942); *Haspel v. O'Brien,* 218 Pa. 146, 67 A. 123 (1907).

Further, the Municipality Authorities Act of 1945 was intermediate in relation to the Public Utility Law enacted in 1937 and the Public Utility Code enacted in 1978. Section 1963 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1963 provides that:

A statute which reenacts the provisions of an earlier statute shall not be construed to repeal an intermediate statute which modified but did not effect an amendment to such earlier statute. Such intermediate statute shall be construed to remain in force and to modify the reenactment in the same manner as it modified the earlier statute.

The circumstances of this case fit this rule exactly. The Public Utility Code reenacts the Public Utility Law. It may not therefore be construed to repeal Section 4B(h) of the Municipality Authorities Act of 1945, an intermediate statute which modified but did not effect an amendment of the Public Utility Law. Hence Section 4B(h) of the Municipal Authorities Act of 1945 remains in force and modifies the Public Utility Code in the same manner as it modified the Public Utility Law.

Order affirmed.

#### ORDER

AND Now, this 12th day of January, 1984, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.