578 A.2d 984

**WHITE ROCK SEWAGE CORPORATION, Petitioner**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**Linda SPARROWE, Jacqueline M. Verney and White Rock Civic Association, Petitioners**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1990.

Decided June 28, 1990.

Craig A. Doll, Harrisburg, for petitioner, White Rock Sewage Corp.

Gregory R. Neuhauser, with him, Thomas J. Sniscak and Thomas P. Brogan, Malatesta, Hawke & McKeon, Harrisburg, for petitioners, Linda Sparrowe, et al.

Patricia Krise Burket, Asst. Counsel, with her, Frank B. Wilmarth, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, Harrisburg, for respondent.

D. Mark Thomas, with him, Jack F. Aschinger, Thomas & Thomas, Harrisburg, for intervenors, Monroe Tp. and South Middleton Tp.Mun. Authority.

Before CRUMLISH, Jr., President Judge, and CRAIG, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PELLEGRINI, Judge.

White Rock Sewage Corporation (White Rock) appeals from an Order of the Pennsylvania Public Utility Commission (PUC) dismissing their petition requesting a determination of the reasonableness of an agreement between White Rock and Monroe Township, and the justness and reasonableness of the rates charged to White Rock by the South Middleton Township Municipal Authority (South Middleton Authority) for sewage processing.

White Rock is a duly organized public utility corporation operating a sewage collection system and providing public sewage services to a development known as White Rock Acres in Monroe Township, Cumberland County, Pennsylvania. Because White Rock does not own a sewage treatment facility, White Rock entered into an Agreement on April 27, 1978 (Agreement) with Monroe Township under which Monroe Township agreed to process White Rock's sewage at a municipal sewage treatment facility located in Monroe Township. The facility, constructed by South Middleton Authority, is owned by both South Middleton Authority and Monroe Township. White Rock agreed to construct a force main to connect its sewage collection system to the sewage treatment facility in Monroe Township and paid Monroe Township a connection fee of $10,700. Upon completion of the force main, White Rock transferred ownership of the main to Monroe Township. White Rock also agreed to be bound by Monroe Township's rates, rules and regulations,

which were to be decided at a future date.[1]   At the time of the Agreement, White Rock and Monroe Township informally agreed upon a metered rate of $3.65 per 1,000 gallons of sewage.

On June 22, 1978, Monroe Township enacted sewage rate Ordinance No. 3 which established a metered rate of $3.65 per 1,000 gallons of sewage to be applicable to a certain classification of customers.   The Ordinance failed to include White Rock's sewage collection system within any of the classifications.   In August of 1978, White Rock connected its system to the municipal treatment facility and was billed at the metered rate of $3.65 per 1,000 gallons of sewage. White Rock made payments to Monroe Township at this rate for the third and fourth quarters of 1978, and for the first and second quarters of 1979.   Thereafter, White Rock stopped making payments due to insufficient funds.

Subsequently, Monroe Township filed an action in the Cumberland County Court of Common Pleas to collect the past due money owed by White Rock for services provided. The trial court held that an implied contract existed between White Rock and Monroe, and that White Rock was required to pay $3.65 per 1,000 gallons of sewage treated pursuant to Ordinance No. 3.   The trial court entered a judgment against White Rock awarding Monroe Township $57,426.48 in unpaid fees.   White Rock then appealed to this court, which by Order dated September 12, 1983, affirmed the trial court's decision.[2]

On December 8, 1987, White Rock filed a petition with the PUC to determine the lawfulness of the Agreement between White Rock and Monroe Township.   In the alternative, White Rock requested that the PUC initiate an investigation into the rates charged by South Middleton to custom-

---

**1.** Paragraph 6 of the Agreement between White Rock and Monroe Township reads as follows:

    6.  White Rock covenants and agrees to be bound by the Township's rates, rules and regulations now in effect or hereafter promulgated.

**2.** See *White Rock Sewage Corporation v. Township of Monroe,* 77 Pa.Commonwealth Ct. 119, 465 A.2d 102 (1983).

ers outside its corporate limits. On January 14, 1988, Monroe Township and South Middleton filed a joint motion to dismiss with the PUC on the grounds that the justness and reasonableness of the Agreement and rates thereunder had already been affirmed by the Court of Common Pleas and the Commonwealth Court. Additionally, they averred that the PUC lacked jurisdiction to hear White Rock's petition.

On October 17, 1988, two White Rock customers and the White Rock Civic Organization (Intervenors) filed a petition to intervene based on a claim of commonality of interests and administrative efficiency. In an opinion dated July 26, 1989, the PUC dismissed White Rock's petition for lack of jurisdiction, and, accordingly, found that the petition to intervene was moot. Both White Rock and the Intervenors filed petitions for review with this court challenging the lawfulness of the PUC's Order dismissing White Rock's petition and Intervenors' petition to intervene. Those petitions have been consolidated for our review.

The issues now before us are whether the PUC has subject matter jurisdiction to review a contract between a municipality and a public utility, and to review the rates set by a municipality for sewage processing.

■ White Rock and Intervenors both contend that the PUC erred in dismissing White Rock's petition to the PUC to determine the reasonableness of the Agreement. They argue that Sections 507 and 508 of the Pennsylvania Public Utility Code (Code) [3] give the PUC the authority to determine the reasonableness of an agreement between a public utility and a municipal authority and to vary, reform or revise an agreement. We disagree.

Section 507 of the Code provides:

*Except for a contract between a public utility and a municipal corporation to furnish service at the regularly filed and published tariff rates,* no contract or agreement between any public utility and any municipal

3. 66 Pa.C.S. §§ 507, 508.

corporation shall be valid unless filed with the commission at least 30 days prior to its effective date. Upon notice to the municipal authorities and the public utility concerned, the commission may, prior to the effective date of such contract or agreement, institute proceedings to determine the reasonableness, legality or any other matter affecting the validity thereof. Upon the institution of such proceedings, such contract or agreement shall not be effective until the commission grants its approval thereof. (Emphasis added.)

While Section 507 generally gives the PUC the authority to determine the reasonableness of an agreement between a public utility and a municipal corporation, an agreement between those two parties to furnish service at regularly filed and published rates is set forth specifically within that section as an exception to the PUC's authority. This court has previously held that a contract under which a municipal authority agrees to provide water to a privately owned public utility falls within this exception, and the PUC is without authority to review the contract. *Virgilli v. Southwestern Pennsylvania Water Authority*, 58 Pa.Commonwealth Ct. 340, 427 A.2d 1251 (1981). In this case, Monroe Township has agreed to provide White Rock with sewage treatment service, and pursuant to Ordinance 3, there is a published schedule of rates. Based on the exception contained in Section 507 of the Code, the PUC is without authority to review the April 27, 1978 Agreement.

White Rock also argues that because Section 508 of the Code gives the PUC the power to vary, reform or revise an agreement, Section 508 impliedly gives the PUC subject matter jurisdiction to investigate the terms of that agreement. Section 508 of the Code, 66 Pa.C.S. § 508, provides in part:

The commission shall have power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or hereafter entered into between any public utility and any person, corporation, or municipal

corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth.

Although the PUC had the authority to evaluate the reasonableness of the Agreement under Section 508, Section 508 is limited by Section 1301, 66 Pa.C.S. § 1301. Section 1301 provides that only public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, *beyond its corporate limits,* shall be subject to regulation and control by the Commission as to rates, with the same force and in like manner, as if such service were rendered by a public utility. Although the residential area serviced by White Rock extends beyond the municipal boundaries of Monroe Township, the PUC determined that the force main which collects White Rock's wastes is located in Monroe Township, and any collection services provided to White Rock by Monroe Township is solely within Monroe Township's boundary. Because Monroe Township is not providing collection services outside of its municipal boundaries, they are not subject to regulation under Section 508 of the Code by the PUC regarding rates and services.

■ In the alternative, White Rock and Intervenors contend that the PUC possesses the requisite jurisdiction under Section 1301 of the Code to determine whether South Middleton Authority is charging White Rock according to rates which are reasonable because South Middleton Authority is providing public utility services beyond its corporate limits. White Rock reasons that because Monroe Township leases South Middleton Authority's facility to process waste, South Middleton Authority is the party actually providing the treatment services to White Rock.

■ White Rock's argument that South Middleton Authority is providing utility services outside of its boundaries is incorrect. Municipal authorities are not creatures, agents

or representatives of municipalities which organize them, but rather are independent agencies of the Commonwealth and a part of its sovereignty. *Highland Sewer and Water Authority v. Engelbach,* 208 Pa.Super. 1, 220 A.2d 390 (1966). As such, South Middleton Authority may provide services to many different areas in the Commonwealth and has no boundaries within which it must limit its services. However, even if we were to find that South Middleton was offering services outside of its boundaries, the PUC has determined that it does not have jurisdiction over the reasonableness of the rates fixed or over the services provided by a municipal authority beyond the limits of the municipality which created it, based on the holding in *Graver v. Pennsylvania Public Utility Commission,* 79 Pa.Commonwealth Ct. 528, 469 A.2d 1154 (1984), which addresses the PUC's jurisdiction as provided by Section 306 B(h) of the Municipality Authorities Act.[4]

In *Graver,* this court held that exclusive jurisdiction of questions relating to the reasonableness of rates fixed or services provided by a municipal authority beyond the limits of the municipality which created it were vested in the Court of Common Pleas. This determination was made pursuant to Section 306 B(h) of the Act which provides in pertinent part:

> Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located ... *The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service.* (Emphasis added.)

Therefore, based on *Graver* and Section 306 B(h) of the Act, the PUC correctly determined that they were unable to

---

4. The Municipalities Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 306(B)(h).

review the rates charged to White Rock by South Middleton.

▉ Our scope of review is limited to determining whether the PUC's findings are supported by substantial evidence, an error of law has been committed, or constitutional rights have been violated. *Crown American Corporation v. Pennsylvania Public Utility Commission*, 76 Pa. Commonwealth Ct. 305, 463 A.2d 1257 (1983). Because the PUC lacks jurisdiction to review the reasonableness of the Agreement between White Rock and Monroe Township and to determine the reasonableness of the rates charged by South Middleton to White Rock, we find that the PUC properly dismissed White Rock's petition and found that the petition to intervene was moot. Accordingly, we affirm the decision of the PUC.

### ORDER

AND NOW, this 28th day of June, 1990, the Order of the Pennsylvania Public Utility Commission, dated June 29, 1989, No. P–870276, is affirmed.