**SHENANGO TOWNSHIP BOARD OF SUPERVISORS, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 21, 1996.

Decided Dec. 20, 1996.

LeeAnn A. Fulena, New Castle, for petitioner.

Susan D. Colwell, Assistant Counsel, Harrisburg, for respondent.

Anthony C. DeCusatis, Philadelphia, for intervenor, Pennsylvania–American Water Company.

Before KELLEY and LEADBETTER, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Shenango Township Board of Supervisors (Shenango) appeals from the order of the Pennsylvania Public Utility Commission (PUC) that denied Shenango's exceptions to the Administrative Law Judge's (ALJ) determination, thus adopting the ALJ's determination and dismissing Shenango's complaint. We affirm.

In late 1987 and early 1988, Shenango made preliminary inquiries to the Pennsylvania–American Water Company (PAWC) regarding its desire to install water lines within the Township of Shenango (Township) as a means of promoting economic development. Shenango's interest later expanded to include an area where Township residents were experiencing problems with their water wells. Shenango stated that it wanted to explore the possibility of setting itself up as a separate public water distribution system, installing water mains to serve its residents, purchasing all of its water from PAWC at a "bulk" rate and reselling it to individual re-

tail customers. PAWC did not wish to negotiate as it refused to be a wholesale provider to any entity that would resell its water to ultimate purchasers located within PAWC's certified service area. However, in the course of subsequent discussion, PAWC informed Shenango that it would extend water mains within the Township in accordance with the terms of its tariff on file with the PUC. PAWC's PUC-approved tariff rule concerning main extensions provided, in pertinent part, that PAWC would fully fund the installation of thirty-five feet of main line for each bona fide service applicant. The applicant would have to advance, on a pre-tax basis, the cost of any facilities in excess of thirty-five feet. Applicants who made such an advance were entitled to receive a refund for each additional customer who connected to the applicant-funded main extension within the next ten years.

Following further negotiations, PAWC and Shenango entered into an agreement, dated September 12, 1991, (Agreement) setting forth their respective rights and obligation with regard to the installation of water mains within the Township and the furnishing of water service to prospective customers.

The Agreement provided that Shenango would construct the water facilities, consisting of approximately 35,600 feet of main extension and a booster pumping station and would lease the Township's water facilities to PAWC for a term of up to twenty years. In consideration of the lease, PAWC agreed to supply the total water requirements to the customers requesting service from the Township water facility, install at its sole cost the service connections and meters to serve such customers, and operate and maintain the facilities during the term of the lease. The PUC approved the Agreement and the water facilities were completed and placed in service in 1993.

In 1994, Shenango filed a complaint with the PUC seeking immediate payment from PAWC for the cost of constructing the Township water facilities. As a basis of its complaint, Shenango relied upon 52 Pa.Code § 69.171, which set forth the PUC's policy regarding line extensions, issued by the PUC on August 20, 1992, (1992 Policy Statement) which Shenango interpreted as requiring all utility companies to extend service at their cost.[1]

The 1992 Policy Statement prompted the filing of several complaints by litigants who interpreted its broad, general language as calling into question the validity of previously-approved main extension rules contained in various utilities' tariffs. As a consequence, on December 8, 1993, the PUC enunciated rule making to rescind the 1992 Policy Statement and on December 28, 1995, issued a final order. *See* 52 Pa.Code § 65.21 and § 65.22. The order reiterated the PUC's conclusion that a utility could lawfully require the party requesting an extension of utility facilities to bear the cost thereof, if that party is not a "bona fide service applicant," if the request entails "special utility service," or if the facility extension would be "uneconomic or unreasonable absent an appropriate customer contribution."

Shenango later amended its complaint requesting additionally that the PUC exercise

---

1. The 1992 Policy Statement provides:

The Pennsylvania appellate courts have established common law requiring the propriety of a utility requiring a contribution-in-aid-of-construction prior to extending service and facilities to a service applicant. The Pennsylvania judiciary has consistently determined that generally a utility shall bear the cost of capitalizing the investment necessary to extend service and facilities to a *bona fide service applicant unless the applicant is requesting special utility service.* A bona fide service applicant is an applicant who is applying for utility service to a primary residence or place of business where the person or business applicant resides; special utility service varies from utility group to utility group and should be defined in all utility tariffs. Only if a given extension of time would materially handicap the utility in securing a fair return on its investment or would place an undue burden on utility customers as a result of rate increases in the utility permitted to require a contribution-in-aid-of-construction from the service applicant. It is the Commission's policy to closely follow the common law established by the Pennsylvania appellate courts in reviewing the application of fixed utility line extension tariff provisions regardless of the language or parameters of a given line extension rule. A utility application of a line extension rule which is inconsistent with the common law of the Commonwealth will be viewed as unreasonable utility service violative of 66 Pa.C.S. § 1501. (Emphasis added.)

its authority under Section 508 of the Public Utility Code, 66 Pa.C.S. § 508, to unilaterally revise the Agreement.

At the time the ALJ issued his initial decision, the PUC had not yet rescinded the 1992 Policy Statement. However, the ALJ concluded that the policy statement was inapplicable to the facts because it found that Shenango's request for line extension was not made by a "bona fide service applicant" as a "bona fide service applicant" was an applicant applying for utility services to a primary residence or place of business. The ALJ also rejected Shenango's request for contract revision under Section 508 of the Public Utility Code because: 1) the PUC was fully aware of the "common law" dealing with utility line extension which the 1992 Policy Statement proposed only to summarize; and 2) the Agreement was entered into pursuant to the authority of PAWC's tariff which had been fully approved by the PUC, again with full knowledge of the dictates of the "common law."

By the time Shenango filed exceptions to the ALJ's initial decision, the PUC had entered its final order rescinding the 1992 Policy Statement; nonetheless, the PUC did analyze Shenango's claims in light of the policy statement and affirmed the ALJ's holding that the 1992 Policy Statement was not applicable to the facts of the case because 1) Shenango was not a "bona fide service applicant," and 2) because the Township project required the construction of a booster pump station which it considered a "special utility service." Furthermore, the PUC held that even if the 1992 Policy Statement were to be applicable to the case, the 1992 Policy Statement postdated the written Agreement of the parties and thus, the PUC determined that the facts of the case did not justify the exercise of its powers under Section 508 of the Public Utility Code.

On appeal to this Court,[2] Shenango argues that the PUC erred in denying its exceptions in adopting the ALJ's determination that Shenango was not a "bona fide service applicant." Shenango also asserts that the 1992 Policy Statement should be made applicable retroactively even though it postdated the Agreement.

The PUC determined that it would not unilaterally alter the Agreement pursuant to its authority under Section 508 of the Public Utility Code.[3] Section 508 does not establish precise guidelines for the exercise of the PUC's contract reformation authority,

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704. Further, in *Pennsylvania Game Commission v. Pennsylvania Department of Environmental Resources*, 97 Pa.Cmwlth. 78, 509 A.2d 877 (1986), we defined the appropriate limits of this Court's review of an administrative agency stating:

When we review an administrative order, the prevailing party is entitled to the benefit of every inference which can be logically drawn from the evidence when viewed in a light most favorable to the prevailing party. Questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the factfinding agency, and are not usually matters for a reviewing court. An administrative agency has wide discretion when establishing rules, regulations, and standards, and also in the performance of its administrative duties and functions, and this Court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith or blatant abuse of discretion.

*Id.* 509 A.2d at 880 (citations omitted).

3. Section 508 of the Public Utility Code states, as follows:

The commission shall have power and authority to vary, reform, or revise, upon a fair, reasonable and equitable basis, any obligations, terms or conditions of any contract heretofore or hereafter entered into between any public utility and any person, corporation, or municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth. Whenever the commission shall determine, after reasonable notice and hearing, upon its own motion or upon complaint, that any such obligations, terms, or conditions are unjust, unreasonable, inequitable, or otherwise contrary or adverse to the public interest and the general well-being of this Commonwealth, the commission shall determine and prescribe, by findings and order, the just, reasonable, and equitable obligations, terms, and conditions of such contract. Such contract, as modified by the order of the commission, shall become effective 30 days after service of such order upon the parties to such contract.

but it does give the PUC broad and flexible range to find that a contract's terms are "unjust, unreasonable, inequitable, or otherwise contrary or adverse to public interest...." 66 Pa.C.S. § 508. In *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 112 Pa.Cmwlth. 611, 535 A.2d 1246, 1248 (1988), we interpreted Section 508 as follows:

> Inasmuch as Section 508 of the Code, 66 Pa.C.S. § 508, gives the PUC the authority to vary, reform or revise contracts upon a fair, reasonable and equitable basis, we cannot say as a matter of law that the PUC either abused its power or misapplied the law in this case.

Further, Section 508 must be read *in pari materia* with other sections of the Public Utility Code that may be relevant to determining if a particular factual scenario is a proper subject for the exercise of the PUC's contract reform power. 1 Pa.C.S. § 1932. *See also White Rock Sewage Corp. v. Pennsylvania Public Utility Commission,* 133 Pa. Cmwlth. 608, 578 A.2d 984 (1990).

■ Shenango asserts that the ALJ's finding that it was not a "bona fide service applicant" was a technical finding which was not only incorrect but unfair, as Shenango was acting at the request of bona fide applicants in requesting water service and that other residents, who applied individually for such service, received the benefit of PAWC's line extension. However, the PUC found that the Township was not a bona fide service applicant because it, in fact, acted as a promoter of real estate development. Matters pertaining to the extension of utility service, the construction of utility facilities and the need for customer deposits or "advances" are peculiarly within the expertise of the PUC, *East Goshen Township v. Pennsylvania Public Utility Commission,* 87 Pa. Cmwlth. 52, 486 A.2d 550 (1985), and thus, we will refrain from revisiting these factual determinations.

■ Because Pennsylvania courts have repeatedly held that tariff provisions previously approved by the PUC are prima facie reasonable, *Zucker v. Pennsylvania Public Utility Commission,* 43 Pa.Cmwlth. 207, 401 A.2d 1377 (1979), a complainant seeking to evade the effect of an existing tariff provision, such as Shenango, carries a very heavy burden to prove that the facts and circumstances have changed so drastically as to render the application of the tariff provision unreasonable. *Id.; see also Brockway Glass Co. v. Pennsylvania Public Utility Commission,* 63 Pa.Cmwlth. 238, 437 A.2d 1067 (1981). The PUC held Shenango did not meet this burden, and following our review of the record, we must agree.

■ Shenango also asserts that the PUC erred in failing to apply the 1992 Policy Statement set forth in 52 Pa.Code § 69.171, retroactively even though it postdated the Agreement, because its adoption simply represented the continuation of existing common law. As stated previously, 52 Pa.Code § 69.171(b) provides:

> The Pennsylvania judiciary has consistently determined that generally a utility shall bear the cost of capitalizing the investment necessary to extend service and facilities to the bona fide service applicant unless the applicant is requesting special utility service.

However, a statement of policy does not have the force of law, and is merely interpretive in nature and is not binding upon a reviewing court. The value of a policy statement is only persuasive, so long as it represents an accurate interpretation of the relevant statute or other authorities from which it is derived. *Pennsylvania Human Relations Commission v. Norristown Area School District,* 20 Pa.Cmwlth. 555, 342 A.2d 464 (1975), *aff'd* 473 Pa. 334, 374 A.2d 671 (1977). Consequently, the 1992 Policy Statement was never a primary source of governing law.

Second, the 1992 Policy Statement never purported to do more than summarize the basic principles of law concerning line extension and commit the PUC to apply those principles if a utility line extension were challenged. The policy statement was not intended to affect a change in the PUC's approach to handling line extension disputes. As the ALJ emphasized, the PUC had previously approved the 1991 Agreement, as well as the tariff on which it was based, with full knowledge of the common law principles it

later summarized in the 1992 Policy Statement. Under these circumstances, the issuance of the 1992 Policy Statement cannot be regarded as a material intervening event justified in the PUC's reconsideration of the 1991 order approving the Agreement.

Finally, we must note that regardless of whether the 1992 Policy Statement was applied or not, Shenango was found to not be a "bona fide service applicant." Thus, the retroactive application of the 1992 Policy Statement could not affect it. Therefore, we hold that the PUC did not err in affirming the ALJ's determination that the policy statement should not be applied retroactively.

Accordingly, we affirm.

### ORDER

AND NOW, this 20th day of December, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.