Ray W. MOYER and Clara
L. Moyer, Appellants,

v.

### BERKS COUNTY BOARD OF ASSESSMENT APPEALS.

Ray W. Moyer and Clara L. Moyer

v.

### Berks County Board of Assessment Appeals, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 9, 2002.
Decided June 28, 2002.

---

P. Daniel Altland, Harrisburg, for appellants.

Edwin L. Stock, Reading, for appellee.

Before PELLEGRINI, Judge, and LEAVITT, Judge, and DOYLE, Senior Judge.

OPINION BY Judge LEAVITT.

Ray and Clara Moyer (Landowners) appeal from an August 30, 2001 order (Order) of the Court of Common Pleas of Berks County (trial court), affirming a decision of the Berks County Board of Assessment Appeals (Board) to eliminate their preferential use assessment and to impose certain roll-back taxes on their farmland. The Board's action ended the enrollment of Landowners' farmland in the tax relief program established by the Farmland and Forest Land Assessment Act of 1974, popularly known as the "Clean and Green Act."[1] The Board cross-appeals on the trial court's calculation of the amount of roll-back taxes. We affirm in part and reverse in part.

Prior to June 28, 2000, Landowners had three tracts of land enrolled in the Clean and Green program. Two of the tracts, known as the Moyer Farm and the Woodland Tract, were enrolled in the Clean and Green program on March 3, 1993, through a single application. The third tract, known as the Christman Farm, had been enrolled in the Clean and Green program by the previous owner, and Landowners continued the enrollment by application dated May 19, 1997.

On January 14, 2000, Landowners obtained approval of a subdivision plan to

---

1. Pennsylvania Farmland and Forestland Assessment Act of 1974, Act of December 19, 1974, P.L. 973, *as amended,* 72 P.S. § 5490.1–5490.13.

establish a residential use for 5.362 acres of the Christman Farm located on the east side of Pearl Road. Because the local township zoning ordinance requires agricultural lots to be a minimum of 25 acres, Landowners' subdivision plan also had the Christman Farm annex 2.789 contiguous acres from the Moyer Farm. The newly configured Christman Farm of 25.06 acres was now located entirely on the west side of Pearl Road. On June 25, 2000, Landowners conveyed the Christman Farm to themselves; this conveyance did not include the subdivision of 5.362 acres on the east side of Pearl Road. The Christman Farm deed was recorded in the Berks County Recorder of Deeds office on July 5, 2000. All parties agreed that the change in the use of the 5.362 acres from agricultural to residential constituted a split-off under the Clean and Green Act, triggering the imposition of roll-back[2] taxes on the Christman Farm.

The Chief Assessor of Berks County (Chief Assessor) however, determined that the Christman's Farm's annexation of 2.789 acres also constituted a split-off from the Moyer Farm for purposes of the Clean and Green Act. Thus, he terminated the preferential use assessment for the Christman Farm, the Moyer Farm and the Woodland Tract and ordered roll-back taxes, with interest, on all three properties. The logic for including the Woodland Tract, which was unaffected by the subdivision plan, was that its application for enrollment in the Clean and Green program was made in a joint filing with the Moyer Farm. The Chief Assessor notified Landowners of his decision by letter dated September 7, 2000.

Landowners challenged the Chief Assessor's action by filing appeals for each of the three properties on September 29, 2000. The Board affirmed the decision of the Chief Assessor by letter dated December 8, 2000. Landowners thereafter appealed the decision to the trial court, which heard the case in a *de novo* hearing on June 6, 2001.

At the hearing, evidence was presented on the use of the three properties, changes in their boundaries and associated governmental filings. Because there was no issue that the subdivision plan created a split-off with respect to the 5.362 acres on the east side of Pearl Road, the evidence focused on the 2.789 acres that was moved from the Moyer Farm to the Christman Farm.

The Director of Real Estate for the Assessment Office of Berks County (Director) testified that the 2.789 acres annexed to the Christman Farm continued to be used for agricultural use; that both the Moyer Farm and the Christman Farm exceeded ten acres; and that both continued to be owned by the same property owners. He also testified that the 2.789 acres was never a separately existing tract. (R.R. 50a).

There was also testimony that the deed creating the newly configured Christman Farm was recorded on July 5, 2000 and then forwarded to the Assessment Office, probably between July 28 and August 3, 2000. It was also established that the Chief Assessor's notice was sent to Land-

---

2. The Clean and Green Act defines "roll-back tax" as follows:

The amount equal to the difference between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven.

Section 2, 72 P.S. § 5490.2

owners on September 7, 2000, more than one month after his office became aware of the Christman Farm deed.

■ The trial court entered its Order denying Landowners' appeal of the revocation of the preferential use assessment for all three properties and the imposition of roll-back taxes. In calculating the roll-back taxes, the trial court applied a regulation of the Department of Agriculture in effect on the day of its Order, and not the statement of policy in effect when the conveyance, or breach, occurred, to calculate the Landowners' tax liability. The tax liability would have been higher under the statement of policy. Both Landowners and the Board appealed the trial court's Order.[3]

On appeal, the issues are: 1) whether the transfer of 2.789 acres from the Moyer Farm to the Christman Farm constituted a "separation" or a "split-off" as those terms are used in the Clean and Green Act; 2) whether including two separate properties on a single application for enrollment in the Clean and Green program means that a change in the use of one will cause the other to lose its preferential use assessment and be subject to roll-back taxes; 3) whether the sanctions for a split-off include the loss of a preferential use assessment for property remaining in farmland; 4) whether the Board's failure to follow the notice requirement in the statute exonerates the Landowners from any roll-back tax liability; and 5) whether the trial court should have applied the Department of Agriculture's statement of policy, not the regulation, to calculate the Landowners' tax liability.

■ Landowners argue that the annexation of 2.789 acres from the Moyer Farm to the Christman Farm constitutes a separation under the Clean and Green Act because each farm, before and after the annexation, remained in agricultural use and exceeded 10 acres. They describe the transaction as a change in boundary lines between two parcels of farmland that does not trigger penalties under the Clean and Green Act. We agree.

Under the Clean and Green Act, a "split-off" is defined as,

> A *division,* by conveyance or other action of the owner, of lands devoted to agricultural use, ... and preferentially assessed under the provisions of this act *into two or more tracts of land,* the use of which on one or more of such tracts does not meet the requirements of section 3.

Section 2, 72 P.S. § 5490.2 (emphasis added). Section 3 relates to the size of the new tracts of land. The relevant provision of Section 3 states:

> (a)(1) Land presently devoted to agricultural use: Such land was devoted to agricultural use the preceding three years *and is not less than ten contiguous acres in area* ... or has an anticipated yearly gross income of at least two thousand dollars ($2,000).

72 P.S. § 5490.3(a)(1). (emphasis added). In contrast, a "separation" under the Clean and Green Act is defined as,

> A division, by conveyance or other action of the owner, of lands devoted to agricultural use, ... and preferentially assessed under the provisions of this act, into two or more tracts of land, *the use of which continues to be agricultural use, ... and all tracts so formed meet the requirements of section 3.*

---

3. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Saenger v. Berks County Board of Assessment Appeals,* 732 A.2d 681 (Pa.Cmwlth.1999).

Section 2, 72 P.S. § 5490.2. (emphasis added).

Under this scheme, a property enrolled in the Clean and Green program may be divided by a "split off" or by a "separation." The tax consequences of each action are quite different. A split-off is a newly-created tract of less than ten acres and, regardless of whether that tract continues in an agricultural use, will subject the property owner to roll-back taxes on the land from which the division was made *and* the new tract created by division.[4] On the other hand, a new tract created by separation, *i.e.*, one that is larger than ten acres and continues in agricultural use, does not create liability for roll-back taxes.[5]

In this appeal, the Board acknowledges that both the Moyer Farm and Christman Farm remained in agricultural use before and after the conveyance. However, it asserts that because the acreage annexed from the Moyer Farm was under 10 acres, the transaction must be considered a split-off subject to roll-back taxes. The Board treats the 2.789 acre parcel as a separate parcel, a conclusion not supported by the record. As dawn broke on July 5, 2000, the 2.789 acre parcel was part of the Moyer Farm, and then at some moment later that day, when the new Christman Farm deed was recorded, it became part of the Christman Farm. It never had a separate existence. The 2.789 acre parcel was never separately assessed; it was never given a separate tax parcel number; it never existed in the subdivision plan as a separate parcel.[6]

Thus, it is inescapable that neither the subdivision plan nor the revision of the boundary between the Moyer and Christman Farms "formed" a tract of 2.789 acres. The two tracts "so formed" by the division were a somewhat smaller Moyer Farm and a somewhat larger Christman Farm, each exceeding ten acres. Thus, we hold that the transaction meets the statutory definition of separation set forth in Section 2 of the Clean and Green `Act, 72 P.S. § 5490.2. *See also Feick v. Berks County Board of Assessment,* 720 A.2d 504 (Pa.Cmwlth.1998).

In light of our conclusion that the move of the 2.789 acres from the Moyer Farm to the Christman Farm constitutes a separa-

---

4. Section 6 of the Clean and Green Act states in relevant part:

(a.1)(1) The split-off of a part of land which is subject to preferential assessment under this act shall *subject the land so split off and the entire tract from which the land was split off to roll-back taxes* as set forth in section 5.1

72 P.S. § 5490.6(a) (emphasis added).

5. Section 6(a.2) of the Clean and Green Act states in relevant part:

(a.2) The owner of land subject to preferential assessment may separate land. If a separation occurs, all tracts formed by the separation shall continue to receive preferential assessment unless, within seven years of the separation, there is a subsequent change of use to one inconsistent with the provisions of section 3. Such subsequent change in use shall subject the entire tract so separated to roll-back taxes as set forth in section 5.1. The landowner changing the use of the land to one inconsistent with the provisions of section 3 shall be liable for payment of roll-back taxes. After seven years from the date of the separation, only that portion of land which has had its use changed to one which is inconsistent with the provisions of section 3 shall be subject to roll-back taxes as set forth in section 5.1. Payment of roll-back taxes shall not invalidate the preferential assessment on any land which continues to meet the provisions of section 3.

72 P.S. § 5490.6(a.2).

6. The Director of Real Estate testified that the recording of a subdivision plan does not trigger any action. The plan sits inactive until such time as an actual transfer of land takes place. (R.R. 46a).

tion, neither the Moyer Farm or the Woodland Tract should have been subjected to any sanctions established in the Clean and Green Act. Accordingly, we need not address the trial court's decision that including two separate properties in a single application will subject both to sanctions in the event that the use of one fails to meet the terms of the statute. We note, however, that the language of the Clean and Green Act nowhere supports this result.[7]

■ Landowners next argue that the reconfigured Christman Farm of 25.06 acres should be allowed to retain its preferential use assessment status even though a split-off has occurred with respect to the 5.362 acre parcel on the east side of Pearl Road. We agree.

The Clean and Green Act provides that a "split-off of a tract of land ... *shall not invalidate the preferential assessment* on any land retained by the landowner which continues to meet the provisions of section 3." Section 6(a.1)(3), 72 P.S. § 5490.6(a.1)(3) (emphasis added). Similarly, "payment of roll-back taxes by the

liable landowner shall not invalidate the preferential assessment on any land which continues to meet the provisions of section 3." Section 6(a.1)(4), 72 P.S. § 5490.6(a.1)(4). Section 4(f) of the Clean and Green Act[8] requires the county board of assessment to record changes where a new deed establishes a split-off or a separation and expressly provides that doing so will not cause a lapse in the preferential use assessment. Because the reconfigured Christman Farm continues to be used for agricultural use and is larger than 10 acres, it "continues to meet the provisions of Section 3." Thus, we hold that the trial court erred in permitting the Board to revoke Christman Farm's preferential use assessment.[9]

■ Landowners next contend that the Board is barred from imposing roll-back taxes on any property, including the Christman Farm, because the Chief Assessor did not calculate the roll-back taxes due within five days after receipt of the deed in its office as required by the Clean and Green Act.[10] There is no dispute that

---

7. This argument of the Board exalts form over substance. Requiring each property to be enrolled by separate application will increase paperwork but in no way advances the policy objectives of the Clean and Green program. The statute itself provides that only "the land so split-off and the entire tract from which the land was split-off" to be subject to roll-back taxes. Section 6(a.1)(1), 72. P.S. § 5490.6(a.1)(1). Here the "entire tract," assuming *arguendo* that the move of 2.789 acres was a split-off, was the Moyer Farm.

8. It states as follows:
    (f) Amendments to initial application shall be as follows:
    (1) (3) When a landowner receiving preferential assessment *changes a deed as a result of a split-off, separation, transfer or change of ownership, the county board for assessment appeals shall adjust the initial application to reflect the deed change.* Such change shall be recorded in accordance with subsection

(d). Recording fees shall be paid by the landowner and the county assessor may not impose any additional fees for amending an application.
    (2) (3) *Preferential assessment on land which continues to meet the provisions of section 3 shall not lapse and shall continue at the same rate previously established under section 4.2.*
    Section 4(f), 72 P.S. § 5490.4(f) (emphasis added).

9. The result is different, of course, for the 5.362 acre parcel on the east side of Pearl Road split-off from the Christman Farm.

10. Section 5 provides in relevant part
    (a) (c) In addition to keeping such records as are now or hereafter required by law, it shall be the duty of the county assessor:
    * * *
    (2) To notify in writing the appropriate taxing bodies and landowner of any preferen-

the Chief Assessor mailed the breach letter more than 5 days after receipt of the deed in its office. However, Landowners' focus on the Chief Assessor's notice obligation to them is misplaced.

■ Under the Clean and Green Act, the county assessor's obligation to give notice and to calculate roll-back taxes is triggered by a notice generated by the property owner. It states in relevant part:

A landowner receiving preferential assessment under this act *shall submit 30 days' notice to the county assessor of a proposed change* in use of the land, a change in ownership of any portion of the land, *or any type of division or conveyance of the land.*

Section 4(c.1), 72 P.S. § 5490.4(c.1) (emphasis added). This prior notice obligation is not satisfied by an *after*-the-fact notice, such as the filing of a deed, which was done here by Landowners. Where an act of the legislature commands an act to be performed within a certain time, it is not within the power of courts to waive or dispense with such mandates. *Commonwealth v. Allied Building Credits,* 385 Pa. 370, 123 A.2d 686 (1956). Landowners discussed the transfers and the split-off over the telephone with the Chief Assessor's office, primarily for the purpose of obtaining a ballpark estimate of the amount of roll-back taxes they would have to pay for the changes in the Christman Farm. This discussion however, was insufficient to satisfy Landowners' obligation to give "30 days' notice to the county assessor." Section 4 of the Clean and Green Act, 72 P.S. § 549.04(c.1). Further, the statement of policy, or interim regulation, that was in effect at the time of the transaction [11] specifically required a landowner to provide the county assessor 30 days advance *written* notice of a change of use, a change in ownership or any type of division or conveyance of enrolled land.[12]

---

tial assessments granted or terminated within their taxing jurisdiction and of the reason for termination within five days of such change. There shall be a right of appeal as provided by section 9(c).

Section 8 provides:

Within five working days after receipt of a notice from the owner of a property, which is preferentially assessed, of a proposed change in the use of the land, to one not meeting the requirements of section 3, or a split-off of a portion of the land, the county assessor shall:

(1) Calculate by years the total of all roll-back taxes due at the time of change and shall notify the property owner of such amounts. In the case of a conveyance of all or part of said land, he shall notify the prospective buyer, if known, of such amount

Section 8(c), 72 P.S. § 5490.5(c).

11. Section 137a.19 provides,

*(b) (c) Landowner's responsibility to provide advance notice of changes.* An owner of enrolled land shall provide the county assessor of the county in which the land is located at least 30 days' advance written notice of any of the following:

(1) (3) A change in use of the enrolled land to some use other than agricultural use, agricultural reserve or forest reserve.

(2) (3) A change in ownership with respect to the enrolled land or any portion of the land.

(3) (3) Any type of division or conveyance of the enrolled land.

*(b) (c) Landowner's duty to notify.* As stated in § 137a.4(b) (relating to application forms and procedures), a person applying for preferential assessment of land under the act shall acknowledge on the application form the obligation under subsection (a) on the application form.

*(c) (c) Civil penalty for failure to provide notice.* A county board for assessment appeals may assess a civil penalty against a person who fails to provide notice required under subsection (a). This civil penalty shall be in accordance with section 5.1 of the act (72 P.S. § 5490.5b) and § 137a.23 (relating to civil penalties).

7 Pa.Code § 137a.19.

12. There have been three sets of regulations promulgated under the Clean and Green Act

In short, the Chief Assessor's obligation to give Landowners the statutory notice was never triggered. The Landowners' filing of the Christman Farm deed did not provide *advance* notice of the split-off for the reasons set forth above, and their oral discussions with the Chief Assessor's office in advance of the transaction do not suffice. This notice requirement of Landowners must be strictly construed.[13] To hold otherwise would also create an unreasonable result—any landowner could avoid the imposition of roll-back taxes by failing to give the county advance written notice of a split-off. Thus, the Chief Assessor was free to assess roll-back taxes on the Christman Farm even though Landowners were not sent a notice within five days of the recording of the Christman Farm deed.

■ The final issue in this appeal concerns the proper calculation of roll-back taxes, which, by virtue of our holdings herein, is now limited to the Christman Farm and the split-off parcel of 5.362 acres. The trial court calculated the roll-

back taxes from the date of the deed's recording and applied simple interest of 6%. The Board contends that roll-back taxes were due for the entire year in which the conveyance, or breach, occurred because there is no statutory basis for prorating these taxes to the date of the breach. It further contends that the interest should have been compounded under authority of the statement of policy[14] in effect on July 5, 2000, when the Christman Farm deed was recorded. We agree in part and disagree in part.

The Board argues that by applying a regulation in effect on the day of the trial court's Order, instead of the statement of policy in effect on the date of breach, the trial court applied the regulation retroactively. The computation of interest and the proration of roll-back taxes were addressed in a regulation made final on March 31, 2001 (2001 regulation), six months prior to the trial court's Order. 7 Pa.Code §§ 137b.1–.133.[15] The trial court reasoned that because the calculation of

---

13. A statute creating a preferential tax treatment for persons or property must be strictly construed against the taxpayer. *Feick v. Berks County Board of Assessment,* 720 A.2d 504, 505 (Pa.Cmwlth.1998); Section 1928(b)(5) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(5).

14. The statement of policy states as follows:

> (h) *Calculation of roll-back taxes.* A county assessor shall calculate roll-back taxes using the following formula, which supercedes the formula in § 137.54 (relating to calculating roll-back taxes):
>
> (1) (0) Calculate the difference between preferential assessment and normal assessment in each of the 7 most recent tax years.
>
> \* \* \*
>
> (2) (3) With respect to each of these seven sums, multiply that sum by the corresponding factor, which reflects compounded interest at the rate of 6% per annum from that particular tax year to the present:
>
> 7 Pa.Code § 137a.20(h).

15. It was adopted by final publication in the Pennsylvania Bulletin. *See* 31 Pa.B.1701 (2001).

---

since 1981 that contained a section on the landowner's notice requirements when considering a change in use for an enrolled property. The 1981 regulations required a landowner to provide the county assessor at least 30 days written notice of a transfer, separation of a split-off and provided a specific list of information regarding the circumstances to be contained in the notice. 7 Pa.Code § 137.41(a) and 7 Pa.Code § 137.52. The interim regulations, categorized by the Department of Agriculture as a statement of policy, were made effective upon publication in the Pennsylvania Bulletin on June 19, 1999, and had similar requirements. *See* footnote 11. The current regulations, adopted in 2001, also require written notice in advance of a change in the use, ownership, or any type of division, conveyance, transfer, separation or split-off. 7 Pa.Code § 137b.63.

interest did not relate to the underlying rights of the parties, the 2001 regulation, which directs simple interest, was procedural and should be applied to calculate the Landowners' roll-back taxes back to the date of breach, *i.e.* July 5, 2000.

It is well established that a statute must be construed prospectively unless the legislature intends that it operate retrospectively and expresses this intent so clearly as to preclude any question. *R & P Services, Inc. v. Commonwealth of Pennsylvania, Department of Revenue*, 116 Pa.Cmwlth. 230, 541 A.2d 432 (1988); Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926.[16] This rule of construction has also been applied to the regulations of administrative agencies. *Jenkins v. Unemployment Compensation Bd. of Review*, 162 Pa.Super. 49, 56 A.2d 686 (1948). On the other hand, procedural statutes and regulations, as opposed to substantive [17] ones, may be applied retroactively. The demarcation between substantive and procedural laws is, however, at times difficult to discern. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982).

We find no evidence in the text of the 2001 regulation that it was to be applied retroactively. If the computation of interest is a procedural matter, then the trial court correctly applied the 2001 regulation when it calculated interest on Landowners' roll-back taxes. Indirect support for this view is found in the statement of policy, replaced by the 2001 regulation, which states that its purpose was procedural.[18] However, we need not resolve the knotty constitutional question of whether the computation of compound interest is substantive or procedural, as we can resolve the issue otherwise.

The Department of Agriculture published the interim regulation as a statement of policy. 7 Pa.Code § 137a.1–.24.[19] This Court has addressed the difference between a statement of policy and a regulation as follows:

> A regulation is a governmental agency's exercise of delegated legislative power to create a mandatory standard of behavior. *Pennsylvania Human Relations Commission v. Uniontown Area School District*, 455 Pa. 52, 313 A.2d 156 (1973). A regulation is binding on a reviewing court if it conforms to the grant of delegated power, is issued in accordance with proper procedures, and is reasonable. *Id.* In contrast, a statement of policy is a governmental agency's statutory interpretation which a court may accept or reject depending upon how accurately the agency's interpretation reflects the meaning of the

---

**16.** It states as follows:

> No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.
> 1 Pa.C.S. § 1926.

**17.** Substantive laws are those that establish rights that can be protected and will affect the outcome of litigation; procedural laws are those that address the methods by which substantive rights are enforced. *Morabito's Auto Sales v. Department of Transportation*, 552 Pa. 291, 715 A.2d 384 (1998).

**18.** The department was specifically directed by the General Assembly to promulgate interim regulations that were to act as *guidelines,* to include a detailed delineation of the *procedures* to be used in implementing the act. Section 12, added by the Act of Dec. 21, 1998, P.L. 1225, 72 P.S. § 5490.4a, 1998 legislative note. As this court has stated, guidelines are more accurately defined as policy and procedures, promulgated to give guidance and direction. *Chimenti v. Department of Corrections*, 720 A.2d 205 (Pa.Cmwlth.1998).

**19.** It was published at 29 Pa. B. 3072 (1999).

statute. *Id.; Pennsylvania Human Relations Commission v. Norristown Area School District*, 20 Pa.Cmwlth. 555, 342 A.2d 464 (1975), *aff'd*, 473 Pa. 334, 374 A.2d 671 (1977).

*Central Dauphin School District v. Department of Education*, 147 Pa.Cmwlth. 426, 608 A.2d 576, 580–581 (1992). A statement of policy is merely interpretive, not binding upon a reviewing court. Its value is one of persuasion, so long as it represents an accurate interpretation of the relevant statute or other authorities from which it is derived. *Shenango Township, Board of Supervisors v. Pennsylvania Public Utility Commission*, 686 A.2d 910 (Pa.Cmwlth.1996.)

The Clean and Green Act provides that a tract of land removed from preferential use "shall be subject to roll-back taxes plus interest . . . at the rate of 6% *per annum.*" Section 5a, 72 P.S. § 5490.5a. It does not specify simple or compound interest. Section 5a must be read *in pari materia* with the statutory interest statute, which holds as follows:

> Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

Section 202 of the Act of Jan. 30, 1974, P.L. 13, 41 P.S. § 202. Further, courts that have interpreted the "legal rate of interest" have come down soundly in favor of simple interest over compounding interest.

It is fairly well established that the law in this Commonwealth frowns upon compound interest and as such will only permit compound interest on a debt when the parties have provided for it by agreement or a statute expressly authorizes it. *Murray v. Prudential Insurance Company of America*, 144 Pa.Super. 178, 18 A.2d 820 (1941); 47 C.J.S. Interest § 3(b) (1946), and cases cited therein.

*Powell v. Retirement Board. of Allegheny County*, 431 Pa. 396, 406, 246 A.2d 110, 115 (1968); *Pennsylvania State Education Association with Pennsylvania School Service Personnel/PSEA v. Appalachia Intermediate Unit 08*, 505 Pa. 1, 476 A.2d 360 (1984); *Carroll v. City of Philadelphia, Board of Pensions and Retirement Municipal Pension Fund*, 735 A.2d 141 (Pa. Cmwlth.1999).

The Department of Agriculture's mandate of compound interest in the interim regulation does not merely construe the statute and related case law, but expands upon its terms. As such, this Court is free to disregard this interpretation and order the use of simple interest in calculating the interest on roll-back taxes.[20] Thus, we affirm the trial court's application of simple interest in calculating Landowners' roll-back tax liability.

■ Finally, we address the Board's contention that the trial court erred in prorating Landowners' tax liability from July 5, 2000 instead of imposing it for the entire tax year in which the breach occurred. The 2001 regulation provides examples of actual calculation of roll-back taxes, and these examples show taxes being pro-rated to the date of the breach.

---

20. Within that context, the 2001 regulation could be construed to be remedial, authorizing its application. *Pope v. Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company*, 176 Pa.Super. 276, 107 A.2d 191 (1954) (if a statute is curative, remedial or procedural only, it may be applicable to litigation instituted prior thereto but not completed).

The Board challenges the proration of roll-back taxes arguing that it is authorized only by an example and not by the regulation itself. Whether one views an example as itself having the force and effect of law or as a mere interpretation of that regulation, the analysis is the same.

■■■■ When considering an administrative agency's interpretation of its own regulation, courts follow a two-step analysis. First, the administrative interpretation will be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. Second, the regulation must be consistent with the statute under which it is promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980). Of course, it goes without saying that a regulation *contrary* to the intent of the statutory provision to which it relates has no validity. *Pennsylvania State Education Association v. Department of Public Welfare,* 68 Pa.Cmwlth. 279, 449 A.2d 89 (1982). Thus, whether or not the Department of Agriculture was correct to authorize prorating of roll-back taxes is determined by reference to the Clean and Green Act.

In the case before us, the statute addresses roll-back tax liability as follows:

If a landowner changes the use of any tract of land subject to preferential assessment under this act to one which is inconsistent with the provisions of section 3 ... the entire tract of which it was a part shall be subject to roll-back taxes plus interest on each *year's* roll-back tax at the rate of six percent (6%) per annum. After the first seven years of preferential assessment, *the roll-back tax shall apply to the seven most recent tax years.*

Section 5a of the Clean and Green Act, 72 P.S. § 5490.5a (emphasis added). Additionally, roll-back taxes are defined as,

The amount equal to the difference between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the *current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven.*

Section 2 of the Clean and Green Act, 72 P.S. § 5490.2 (emphasis added). Finally, the county assessor is charged with the duty upon notice of a split-off to "[c] *alculate by years* the total of all roll-back taxes due at the time of change...." Section 8(c)(1), 72 P.S. § 5490.8(c)(1).

In light of the multiple references to *tax years* in the legislation, we cannot conclude that the General Assembly intended to allow for the proration[21] of roll-back taxes to one moment in the year of breach. We reverse the trial court's decision to apply pro-ration in calculating Landowners' roll-back tax liability.

Accordingly, we reverse the trial court on the revocation of the preferential use assessment on the Christman Farm, the Moyer Farm and the Woodland Tract. We reverse the trial court on the imposition of roll-back taxes on the Moyer Farm and the Woodland Tract. We affirm the trial court's holding that the Chief Assessor's failure to give the statutory notice does not exonerate Landowners, who also failed to give the statutory notice, from roll-back tax liability. Finally, with re-

---

**21.** The proration of taxes upon the sale of real estate is a contractual matter between buyer and seller: the taxes are the liability of the owner at the time of the assessment. 36 P.L.E. *Assessment* § 131 (1975). Such proration, nearly universal in custom, is not based in the taxing statutes.

spect to the roll-back taxes owing on the Christman Farm and on the 5.362 acres split-off from the Christman Farm, we affirm the trial court's use of simple interest but reverse the trial court's pro-ration of the tax liability to the date of the split-off.

## ORDER

AND NOW, this 28th day of June, 2002, the trial court's order of August 30, 2001 in the above-referenced appeal is vacated and the case remanded for further proceedings in accordance with the attached opinion.