**In re Appeal of Eugene K. MARTIN from the Lancaster County Board of Assessment Appeals,**

**Tax Parcel No. 070–5L–16–8, Municipality: Clay Township, Assessment for Rollback Taxes, Property: 2000 W. Route 897, Denver, Pa 17517.**

Commonwealth Court of Pennsylvania.

Argued April 1, 2003.

Decided Aug. 13, 2003.

---

Melvin E. Newcomer, Lancaster, for appellant.

Matthew J. Créme, Jr., Lancaster, for appellee.

BEFORE: COHN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

LEAVITT, Judge.

Eugene Martin (Landowner) appeals from an order of the Court of Common Pleas of Lancaster County (trial court) eliminating his preferential use assessment established under the Pennsylvania Farm-land and Forest Land Assessment Act of 1974,[1] popularly known as the "Clean and Green Act" (Act) and imposing roll-back taxes. The Lancaster County Board of Assessment (Board) has cross-appealed, asserting that the amount of roll-back tax penalty imposed by the trial court was inadequate.[2] We sustain the Board's appeal.

The facts of this case were established by joint stipulation of the parties. Samuel and Floy Martin (Martins) owned 63 acres of land that was subject to a preferential assessment under the Act by Application No. 002682, dated May 23, 1995. On March 1, 1999, Landowner purchased 14 acres from the Martins for which Landowner obtained a separate preferential assessment by Application No. 006810, dated April 12, 1999. On December 31, 1999, Landowner transferred 2 acres to Amos Zook. The parties stipulated that the Martins' sale of 14 acres to Landowner was a "separation,"[3] of their 63–acre parcel and that Landowner's sale of 2 acres to Zook was a "split off"[4] from his 14–acre parcel.

On or about June 28, 2000, Landowner received a notice from the Board indicating that his property no longer qualified for preferential assessment under the Act and that roll-back taxes in the amount of $13,248.69 were due. The tax amount was calculated on the basis of the original 63–

---

1. Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§ 5490.1–5490.13.

2. The appeal and cross-appeal have been consolidated.

3. Section 2 of the Act defines a "separation" as,

    A division, by conveyance or other action of the owner, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act, into two or more tracts of land, the use of which continues to be agri-cultural use, agricultural reserve or forest reserve and *all tracts so formed meet the requirements of section 3.*
    72 P.S. § 5490.2 (emphasis added).

4. Section 2 of the Act defines a "split-off" as,

    A division, by conveyance or other action of the owner, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, *the use of which on one or more of such tracts does not meet the requirements of section 3.*
    72 P.S. § 5490.2 (emphasis added).

acre parcel owned by the Martins because the Board believed that Landowner's conveyance to Zook converted Landowner's land acquisition from the Martins from a statutory separation, an event that preserves a preferential assessment, into a split, an event that triggers the imposition of roll-back taxes.

■ Landowner appealed, and the Board conducted a hearing. The Board upheld the roll-back tax amount, and Landowner appealed to the trial court. The trial court held that Landowner's conveyance to Zook, required the imposition of roll-back taxes. However, it held that it was error for the Board to calculate roll-back taxes on the basis of the original tract of 63 acres, instead of Landowner's 14–acre tract. Both the Landowner and the Board appealed to this Court.[5]

■ On appeal, Landowner asserts that if the Martins' original 63–acre parcel governs the application of the Act, then Landowner's conveyance to Zook did not violate the Act. This is because 2 acres is less than 10% of 63 acres [6] and, as such, it is a *de minimis* split not subject to the penalties set forth in Section 5.1 of the Act.[7] In its appeal, the Board asserts that the Act required the Board to use the 14–acre

parcel to determine whether a violation occurred but then to use the 63–acre tract to calculate the amount of roll-back tax penalty.

These appeals raise a question of statutory construction. Specifically, at issue is the meaning of "entire tract" as used in two separate provisions found in Section 6 of the Act. Section 6(a.1)(1) of the Act states as follows:

> The split-off of a part of land which is subject to preferential assessment under this act shall subject the land so split off and the *entire tract* from which the land was split off to roll-back taxes as set forth in section 5.1.[8] The landowner changing the use of the land to one inconsistent with this act shall be liable for payment of roll-back taxes. The landowner of land which continues to be eligible for preferential assessment shall not be liable for any roll-back taxes triggered as a result of a change to an ineligible use by the owner of the split-off tract.

72 P.S. § 5490.6(a.1)(1) (emphasis added). Section 6(a.2) of the Act states as follows:

> (a.2) The owner of land subject to preferential assessment may separate land. If a separation occurs, all tracts formed

---

5. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Moyer v. Berks County Board of Assessment Appeals*, 803 A.2d 833 (Pa.Cmwlth.2002)

6. Under Section 6(a.1)(1)(i) of the Act, 72 P.S. § 5490.6(a.1)(1)(i), roll-back taxes are not owing for a *de minimis* split, defined as a tract that is no greater than 2 acres and does not exceed 10% of the entire tract subject to preferential assessment. In this case, if Landowner had conveyed 1.4 acres to Zook, it would have constituted a *de minimis* split that did not trigger roll-back taxes or loss of the preferential assessment.

7. Section 5.1 of the Act provides,

If a landowner changes the use of any tract of land subject to preferential assessment under this act to one which is inconsistent with the provisions of section 3 or for any other reason the land is removed from a land use category under section 3, except for a condemnation of the land, *the land so removed and the entire tract of which it was a part* shall be subject to roll-back taxes plus interest on each year's roll-back tax at the rate of six percent (6%) per annum. After the first seven years of preferential assessment, the roll-back tax shall apply to the seven most recent tax years.

72 P.S. § 5490.5a (emphasis added).

8. *See supra* n. 7.

by the separation shall continue to receive preferential assessment unless, within seven years of the separation, there is a subsequent change of use to one inconsistent with the provisions of section 3. Such subsequent change in use shall subject the *entire tract* so separated to roll-back taxes as set forth in section 5.1. The landowner changing the use of the land to one inconsistent with the provisions of section 3 shall be liable for payment of roll-back taxes. After seven years from the date of the separation, only that portion of land which has had its use changed to one which is inconsistent with the provisions of section 3 shall be subject to roll-back taxes as set forth in section 5.1. Payment of roll-back taxes shall not invalidate the preferential assessment on any land which continues to meet the provisions of section 3.

72 P.S. § 5490.6(a.2) (emphasis added). The trial court interpreted "entire tract" to mean Landowner's 14–acre parcel for purposes of determining whether a split-off under Section 6(a.1) of the Act occurred upon the conveyance of 2 acres, and for purposes of calculating the amount of roll-back tax penalty owed under Section 6(a.2).

While this result is a reasonable one, it is not the one commanded by the Act because it fails to give effect to the prohibition against Landowner changing the use of his 14–acre tract to one inconsistent with Section 3 for seven years after its separation from the Martins' 63–acre tract. Section 3 uses are as follows:

\*     \*     \*

(1) Land presently devoted to a agricultural use: Such land was devoted to agricultural use the preceding three years and is not less than ten contiguous acres in area, including the farmstead land, or has an anticipated yearly gross income of at least two thousand dollars ($2,000).

(2) Land presently devoted to agricultural reserve: Such land is not less than ten contiguous acres in area, including the farmstead land.

(3) Land presently devoted to forest reserve: Such land is not less than ten contiguous acres in area, including the farmstead land.

Section 3 of the Act, 72 P.S. § 5490.3. It is not disputed that the 2 acres conveyed to Zook are inconsistent with these purposes.

Section 6(a.2) of the Act is controlling. On March 1, 1999, Landowner and the Martins were each party to a separation, and their respective tracts were enrolled in the program. Accordingly, both parties were entitled to "continue to receive [a] preferential assessment unless, *within seven years of the separation,* there is a subsequent change of use to one inconsistent with the provisions of section 3." 72 P.S. § 5490.6(a.2) (emphasis added). Stated otherwise, for the next seven years, or until March 1, 2006, it was incumbent upon both Landowner and the Martins not to change the use of their respective parcels to one inconsistent with the Act. However, Landowner sub-divided his tract only nine months into the seven year moratorium. "Such subsequent change in use ... [subjected] the entire tract so separated to roll-back taxes ...." *Id.*

The trial court reasoned that the "entire tract so separated" referred to Landowner's 14–acre tract because it is a tract that, indeed, had been party to a separation. The Board contends that the "entire tract so separated" refers to the original 63–acre tract that was "so separated" thereby prohibiting landowners of both parcels from changing the use of their respective parcels to a non-conforming use. We agree with the Board that in the context of Section 6(a.2) "entire" signifies the original

63–acre parcel; otherwise "entire" is surplusage.

The Board's reading gives effect to all the words in Section 6(a.2) of the Act, a result commanded by Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). The Act specifies that the landowner who changes the use of the land to an inconsistent use is the landowner liable for the roll-back tax on "the entire tract so separated." [9] After seven years, the roll-back tax is extinguished. Any other reading renders the seven year moratorium meaningless and will allow multiple split-offs with impunity.

■ Further, this reading is not inconsistent with Section 6(a.1)(1) of the Act. The only term defined in the Act is "tract." [10] "Entire tract" is not defined, and, as such, its meaning defined from the context of the statutory provision where used. Accordingly, "entire tract" may have one meaning for determining whether a split has occurred [11] and another for calculating the amount of roll-back tax penalty owed.

The statutory scheme can produce harsh results, but Landowner could have avoided them in one of two ways. First, he could have waited seven years before making a conveyance of a 2–acre tract. Second, he could have conveyed 1.4 acres, which would have qualified as a *de minimis* split exempt from the roll-back tax penalty of Section 5.1. [12] The Act's penalties may be draconian, but they were the weapons chosen by the General Assembly in an important cause: the defense of Pennsylvania's precious and ever-threatened farmlands and forests.

For these reasons, we reverse the trial court.

## ORDER

AND NOW, this 13th day of August, 2003, the order of the Court of Common Pleas of Lancaster County, dated March 1, 2002, in the above-captioned matter is hereby reversed.

9. Of course, the conveyance to Zook rendered landowner's 14–acre parcel not one "so separated" but one "so split."

10. It defines "tract" as "[a] lot, piece or parcel or land. The term does not refer to any precise dimension of land." Section 2 of the Act, 72 P.S. § 5490.2.

11. After seven years, the proscription of Section 6(a.2) ceases to have application to Landowner. Thereafter, Landowner would only be bound by the dictates of Section 6(a.1)(1) of the Act. At that point, his 14–acre tract would be the "entire tract" for purposes of calculating the roll-back tax penalty.

12. The trial court believed that this reading of the Act may lead to double taxation of the same tract. If the Martins, for example, change part of their 49–acre tract to an inconsistent use prior to March 1, 2006, they too will be subject to roll-back taxes on the 63–acre tract "so separated" on March 1, 1999. This precise question is not before us, and we leave it for another day. Nevertheless, it does seem a result not inconsistent with the Act's purpose, which is to create strong incentives on those that seek a preferential assessment to maintain their land in a manner consistent with the Act.