**Richard A. FEICK, Appellant,**

v.

**BERKS COUNTY BOARD OF ASSESSMENT APPEALS and Antietam School District.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1998.

Decided Nov. 13, 1998.

Peter F. Canci, Reading, for appellant.

Edwin L. Stock, Reading, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This case presents the question of whether the transfer of a tract of forest reserve receiving a preferential tax assessment pursuant to the Pennsylvania Farmland and Forest Land Assessment Act[1] (Act) must satisfy the Act's ten-acre requirement irrespective of the status of the property contiguous to the tract.

The facts of the instant matter are straight forward and undisputed. In 1994, Richard A. Feick (Appellant) owned two adjoining tracts of undeveloped forestland in Berks County. The smaller tract covered 3.279 acres and the larger tract covered 53.6 acres, with both tracts collectively totaling 56.879 acres. Appellant sought to enroll in the preferential tax treatment program created by the Act. This program, commonly referred to as the clean and green program, provides a lower tax rate appropriate for land devoted to farming and forest reserve purposes. Appellant filed a single application with the Berks County Board of Assessment Appeals (Board) for preferential use assessment of both properties under the clean and green program. The Board granted the preferential use assessment commencing with the 1994 tax year since the properties were contiguous and not less than ten acres devoted to forest reserve as required by the Act. At the time of initial application a landowner may group smaller tracts together with other contiguous tracts in order to satisfy the ten contiguous acre requirement. See 7 Pa.Code §§ 137.12 and 137.26.

On March 17, 1997, Appellant conveyed the 53.6 acre tract to the Berks County Conservancy (Conservancy) in exchange for $93,-000.[2] Appellant retained possession of the 3.279 acre tract. At all times both Appellant and the Conservancy remained compliant with the clean and green use provisions of the Act. Indeed the Conservancy purchased the larger tract for the purpose of maintaining it as permanent forest reserve. Appellant's sale of the larger tract triggered notice from the Board advising Appellant that the property he retained failed to meet the acreage requirement of the Act. As a result, the Board imposed rollback taxes[3] in the amount of $4228.74, covering both tracts for the tax years 1994 through 1997.

■ On May 15, 1997, Appellant filed an appeal with the Board regarding its action removing preferential tax assessment status and imposing rollback taxes. After a hearing on June 23, 1997, the Board denied Appellant's appeal and upheld its prior imposition of rollback taxes. Appellant then appealed the Board's decision to the Court of Common Pleas of Berks County (trial court). The trial court issued an order upholding the

1. Act of December 19, 1974, P.L. 973, as amended, 72 P.S. §§ 5490.1–5490.13.

2. The Berks County Conservancy is a Pennsylvania non-profit corporation dedicated to preserving agricultural land, forestland, open space, historic sites and water sheds in Berks County. The Conservancy purchased Appellant's 53.6 acre tract with grant-in-aid assistance pursuant to the Pennsylvania Keystone Recreation, Park and Conservancy Fund Act. Act of July 2, 1993, P.L. 359, as amended, 72 P.S. § 2011–2024.

3. Section 2 of the Act defines rollback taxes as "The amount equal to the difference between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year, the year of change, and in six of the previous tax years or the number of years of preferential assessment up to seven." 72 P.S. § 5490.2.

Board's imposition of rollback taxes. The trial court's order is now before this Court on appeal.[4]

The issue in this case is best analyzed in the context of how the General Assembly chose to provide for transfers of clean and green qualified land without triggering the Act's rollback provision. We therefore find it instructive to begin with a brief overview of the intent of the Act and the relevant provisions governing entry and continued participation in the clean and green program. While the Act addresses farmland and other open space land, only the forest reserve provisions of the Act are at issue in this case and we limit further discussion accordingly. With regard to forest reserve, the intent of the Act is to promote conservation of privately owned woodlands covering an area of ten or more acres. The General Assembly sought to encourage private owners of forest reserve to resist development pressures by ensuring a lower tax rate for property complying with specified clean and green requirements. See 7 Pa.Code §§ 137.5, 137.7 and 137.10.

Section 2 of the Act defines forest reserve as "Land, ten acres or more, stocked by forest trees of any size and capable of producing timber or other wood products." [5] Section 4(b) of the Act provides that application must be made to the county board of tax assessment and that "[p]referential assessment shall continue under the initial application until a land use change takes place." [6] Section 3 of the Act sets forth the require-ments a landowner must satisfy to enter the clean and green program:

(a) For general property tax purposes, the value of land which is presently devoted to ... forest reserve shall on application of the owner and approval thereof as hereinafter provided be that value which such land has for its particular use if it also meets the following conditions: ...

(3) Land presently devoted to forest reserve: Such land is not less than ten contiguous acres in area.

(4) The contiguous tract of land for which application is made is not less than the entire contiguous area used by the owner for ... forest reserve purposes.

(b) The assessor when determining the value of land in ... forest reserve use, shall, in arriving at the value of such land for its particular use, consider available evidence of such lands' capability for its particular use from the soil survey at the Pennsylvania State University, the National Cooperative Soil Survey, the United States Census of Agricultural Categories of land use classes, and evidence of the capability of land devoted to such use.[7]

Essentially, an owner of ten or more acres may submit his or her entire tract to the county taxing authority which will limit the tax collected to an amount commensurate with land devoted to that use as determined by various government agencies.[8] The tax value is established without consideration of the property's zoning status or the value of

---

4. Our scope of review in this tax assessment appeal is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Hydrusko v. County of Monroe*, 699 A.2d 828 (Pa.Cmwlth.1997). Further, it is well settled that a statute creating preferential tax treatment for persons or property must be strictly construed against the taxpayer. Section 1928(b)(5) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(5); *Deigendesch v. County of Bucks*, 505 Pa. 555, 482 A.2d 228 (1984).

5. Unlike agricultural reserve which must be devoted to commercial production in order obtain qualifying use status, the Act does not require that land devoted to forest reserve must be currently engaged in commercial production of timber. This definition recognizes the long-term nature of timber production. 72 P.S. § 5490.2.

6. 72 P.S. § 5490.4. This statement in Section 4(b) gives the impression that a change in the qualifying land use is the only means of triggering the Act's rollback provisions, however, § 5490.6 specifies that certain types of transfers also result in the imposition of rollback taxes. See 7 Pa.Code 137.41–44.

7. 72 P.S. § 5490.3. Pursuant to Section 3, for taxation purposes, qualifying land must be assessed at its present use value, not at its fair market value. *Id.*

8. Landowners seeking to participate in the clean and green program shall include the property as described in the deed. All contiguous land shall be enrolled in the program. See 7 Pa.Code 137.26.

neighboring land. By ignoring the development value of the land for tax purposes, the Act provides incentive to the landowner to preserve the land in its current state. See *Hess v. Montgomery County Board of Assessment Appeals,* 75 Pa.Cmwlth. 69, 461 A.2d 333 (Pa.Cmwlth.1983).

■ Appellant's original two tracts of land satisfied these requirements since collectively they constituted not less than ten contiguous acres exclusively used as forest reserve. Appellant argues that his conveyance of 53.6 acres to the Conservancy and retention of the 3.279 acre tract should not trigger the rollback provisions of the Act since the tracts remain contiguous, not less than ten acres and devoted to use as forest reserve. Appellant further argues that there is no requirement in the Act that each tract forming the qualified forest reserve has to individually satisfy the ten-acre requirement. The Board agreed with this statement in regard to the initial application but counters that once a tract is transferred from preferentially assessed forest reserve, all tracts resulting from the transfer must individually satisfy both the use and acreage requirements of the Act. The Board asserts that Appellant's retention of the 3.279 acre tract violates the transfer provisions of the Act irrespective of its continued use as forest reserve. We agree with the Board's interpretation of the Act and now affirm the trial court's order.

Appellant relies on this Court's decision in the case of *In Re Phillips,* 48 Pa.Cmwlth. 85, 409 A.2d 481 (Pa.Cmwlth.1979), in asserting that the validity of any transfer of preferentially assessed land must be determined by examining the new owner's use of the property rather than the element of transfer. In *Phillips,* the landowners, Mr. and Mrs. Phillips, held a 104 acre farm which they enrolled in the clean and green program of Bucks County. The Phillips' subsequently decided to grant portions of their preferentially assessed land to their children. The original 104 acre tract was divided into three tracts measuring 21, 36, and 47 acres, respectively. All three tracts continued to be used as qualified farmland, however, the board of assessment determined that this transfer constituted a "split-off" which required the imposition of rollback taxes on all 104 acres. This Court reversed the imposition of rollback taxes in concluding that the transfer of land where no change in the qualifying use occurs does not trigger the imposition of rollback taxes. *Id.*

Following the *Phillips* decision the General Assembly amended the transfer provisions of the Act in 1980. The 1980 amendments added the following definitions to Section 2 of the Act to clarify the terms relevant to transfer of preferentially assessed land:

*Separation:* A division, by conveyance or other action of the owner of lands devoted to ... forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, the use of which continues to be ... forest reserve *and all tracts so formed meet the requirements of section 3.*

*Split-off:* A division, by conveyance or other action of the owner of lands devoted to ... forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, the use of which on *one or more of such tracts does not meet the requirements of section 3.*[9]

The General Assembly implemented this revision to accommodate transfers of the type presented in *Phillips,* where only the ownership structure of the forest reserve changes but all remaining tracts individually continue to satisfy the intent and requirements of Section 3 of the Act. A separation essentially is a transfer where the use and acreage requirements are satisfied by each tract created by the subdivision. A split-off results where one or more of the subdivided tracts fails to satisfy the use or acreage requirements of the Act.[10]

---

**9.** 72 P.S. § 5490.2 (emphasis added).

**10.** The General Assembly defined a limited permissible split-off under Section 6 of the Act. Clean and green program participants are permitted to split-off up to two acres annually for residential, agricultural or forest reserve use without triggering rollback taxes, provided the remainder of the tract retains its preferential assessment and the transferee either continues the agricultural or forest reserve use, or constructs and occupies a residential dwelling on the transferred tract. 72 P.S. § 5490.6(b).

Appellant maintains that his transfer to the Conservancy meets the definition of a separation since both tracts continue to be used as forest reserve. Appellant's reliance on *Phillips* in support of this contention is misplaced given that the separation/split-off distinction was not part of the Act at the time we decided *Phillips.* Furthermore, *Phillips* is distinguishable from the standpoint of the size of the tracts in question. In *Phillips,* all tracts created through the conveyance more than satisfied the ten contiguous acre requirement where Appellant's tract at issue here is far less than ten acres. As we are required to strictly construe this Act against the taxpayer, we conclude that the subject transfer fails to satisfy the ten contiguous acre requirement of Section 3.

■ The term "contiguous" [11] cannot be read to permit a landowner to include the acreage of an adjacent landowner in satisfying the ten-acre requirement as argued by Appellant. To do so would vitiate the General Assembly's intent with regard to the ten-acre requirement. The ten-acre requirement achieves two legislative objectives. First, the General Assembly used its discretion in determining that a minimum of ten acres are required before a tract can be said to serve as useful forest reserve.[12] Second, the ten-acre requirement serves to minimize the burden imposed on county taxing authorities which must administer the clean and green program. Allowing Appellant to tack on a neighbor's acreage to reach the ten-acre plateau would admittedly further the Act's primary purpose of maximizing the amount of private acreage maintained as forest reserve. However, permitting tacking would produce

fragmented tracts and thus undermine the administrative manageability facet inherent in the Act's minimum acreage requirement for qualification of preferential assessment.

Since Appellant does not meet the requirements of Section 3, his conveyance to the Conservancy does not qualify as a separation for purposes of the Act. Therefore, this conveyance necessarily is subject to the split-off provision set forth in Section 6 of the Act, which reads as follows:

> The split-off of a part of the land which is being valued, assessed and taxed under this act for a use other than ... forest reserve shall, except when the split-off occurs through condemnation, subject the land so divided and the entire parcel from which the land was divided to liability for the rollback taxes as set forth in section 8 of this act.[13]

Section 8 of the Act provides in pertinent part:

> When any tract of land which is in ... forest reserve use and ... is removed from the category of land preferentially assessed and taxed under this act, shall be subject to taxes in an amount equal to the difference, hereinafter referred to as rollback taxes, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had that land been valued, assessed and taxed as other land in the taxing district in the current tax year ... plus [6%] interest....the rollback taxes shall apply to the seven most recent years.[14]

11. Title 7 of the Pa.Code defines contiguous land or contiguous area as "All portions of one operational unit as described in the deed, whether or not the portions are divided by streams, paved public roads, streets or bridges...." 7 Pa.Code 137.12.

12. The constitutionality of the ten-acre requirement was challenged in *Hess v. Montgomery County Board of Assessment Appeals,* 461 A.2d (Pa.Cmwlth.1983). Hess charged that the ten-acre requirement violated the uniformity clause of the Pennsylvania Constitution on the basis that it discriminated against owners of forestland consisting of less than ten-acres. This Court held that an amendment to Article VIII of the Penn-

sylvania Constitution specifically granted the General Assembly authority to treat land devoted to agricultural and forest reserve use as separate classes of real estate for taxation purposes. The Article VIII amendment authorized the General Assembly to "establish standards and qualifications for private forest reserves." As such, we held that the General Assembly had the requisite Constitutional grant of power to establish a minimum size limitation of ten acres for qualification under the Act. *Id.*

13. 72 P.S. § 5490.6.

14. 72 P.S. § 5490.8.

Given that Appellant's conveyance to the Conservancy qualifies as a split-off rather than a separation, we affirm the trial court's order imposing rollback taxes on the entire preferentially assessed tract of 56.879 acres for the tax years 1994–1997. This is an admittedly harsh result particularly in view of the fact the Conservancy purchased the land for the purpose of ensuring that it permanently remain forest reserve. However, we have no choice but to reach this result given the manner in which the General Assembly chose to balance the conservation and administrative manageability objectives of the Act.

### ORDER

AND NOW, this 13th day of November,1998, the order of the Court of Common Pleas of Berks County, dated January 22, 1998, is hereby affirmed.