### Richard A. CLOSE and Virginia D. Close, Appellants,

### v.

### BERKS COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Dec. 30, 2003.

---

Olan B. Lowery, Limekiln, for appellants.

Deborah A. Sottosanti, Reading, for appellee.

BEFORE: COHN, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Richard A. and Virginia D. Close (Taxpayers) appeal from the April 3, 2003 order of the Court of Common Pleas of Berks County (trial court) that affirmed the June 18, 2002 order of the Berks

County Board of Assessment Appeals (Board) directing a roll-back from the preferential use assessment to full market value assessment of .21 acres of Taxpayers' real estate as required by the applicable provisions of the Pennsylvania Farmland and Forest Land Assessment Act of 1974, more commonly known as the Clean and Green Act (Act).[1] We affirm.

Taxpayers own approximately 42 acres of land located at 340 Loder Road, Exeter Township, Berks County. Taxpayers were granted a preferential tax assessment for their property under the Act. On December 15, 2001, Taxpayers conveyed by deed a .21–acre tract (split-off tract) to Olan B. and Millicent Lowrey. The deed reflected a sale price of $101.00 and noted that the conveyance was for annexation purposes.

On February 27, 2002, the Berks County Assessment Office (Assessment Office) notified Taxpayers that as a result of the transfer, the split-off tract was no longer eligible for preferential assessment under the Act. In addition, the notice informed Taxpayers that the split-off tract would be assessed roll-back taxes for the years 1996 through 2002 in the amount of $110.27.

The Assessment Office's notice also advised Taxpayers that they could appeal the roll-back decision to the Board within 40 calendar days of the date of the notice. Taxpayers did file an appeal and on April 29, 2002, the Board notified them that a hearing would be held on May 20, 2002. The Lowreys were also notified of the hearing.

On June 18, 2002, the Board notified Taxpayers that in view of the evidence presented at the hearing, it decided to uphold the roll-back. Taxpayers appealed to the trial court, which held a *de novo* hearing on March 26, 2003. On April 3, 2003, the trial court issued an opinion and order affirming the Board. Taxpayers' appeal to this Court followed.

### I.

■ Taxpayers' first argument is that the Assessment Office's failure to provide Taxpayers with written or oral notice of the Office's intent to effectuate a roll-back of the preferential assessment for the split-off tract violated the notice requirements in both Section 3(d)(2) of the Act, 72 P.S. § 5490.3(d)(2) and Section 553 of the Local Agency Law, 2 Pa.C.S. § 553.

Section 3(d)(2) of the Act provides:

The county board of assessment appeals may not terminate preferential assessment of land previously determined by the board to qualify for preferential assessment without:

. . . .

(2) *written notice under [Section 5(a)(2) of the Act, 72 P.S. § 5490.5(a)(2) ] from the county assessor to the landowner that preferential assessment is to be terminated,* stating the reason for such termination and *the opportunity for a hearing* under [Section 9 of the Act, 72 P.S. § 5490.9].

72 P.S. § 5490.3(d)(2) (footnotes omitted, emphasis added).

Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, provides:

*No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.* All testimony may be stenographically recorded and a full and complete record may be kept of the proceedings. In the event all testimony is not stenographically recorded and a full and complete record of the proceedings is not provided by the local agency, such

---

1. Act of December 19, 1974, P.L. 973, *as amended,* 72 P.S. §§ 5490.1–5490.13.

testimony shall be stenographically recorded and a full and complete record of the proceedings shall be kept at the request of any party agreeing to pay the costs thereof.

Taxpayers assert that these statutes require that the Assessment Office should have offered them a pre-deprivation hearing before it made its decision to roll-back the preferential assessment of the split-off tract. Taxpayers further assert that, as indicated by the language of those provisions, the Assessment Office's failure to provide a pre-deprivation hearing rendered the roll-back invalid.

In support of their position, Taxpayers cite *City of Philadelphia, Board of License & Inspection Review v. 2600 Lewis, Inc.,* 661 A.2d 20 (Pa.Cmwlth.1995), where this Court determined that Section 553 of the Local Agency Law requires that a local agency provide the holder of a business privilege and food preparation/service license with notice of the pending revocation and an opportunity for a pre-revocation hearing. The Court further noted if an overriding public interest exists to justify the revocation of a license without a prior hearing, a prompt, post-revocation hearing must be held.

In *City of Philadelphia,* the City notified the licensee that it had failed to pay its taxes and that failure to respond to that notice within 15 days would result in the revocation of all of its City licenses. The licensee did not respond and on April 28, 1993, the City revoked the licenses. The licensee appealed and after a brief hearing on May 17, 1993, the case was continued until August 31, 1993, at which time the revocation was affirmed.

On appeal, the court of common pleas denied the licensee's due process challenge on the ground that the licensee had received an adequate post-revocation hearing. This Court reversed on the grounds that the licensee was denied due process inasmuch as it was not provided with either pre-revocation notice or opportunity for a pre-revocation hearing. We further noted that even if an overriding public interest warranted the revocation of the licensee's licenses prior to a hearing, the post-revocation hearing that was provided was not sufficiently prompt to meet due process requirements.

In the present case, the Assessment Office's February 27, 2002 letter to Taxpayer's, captioned "Re: Clean and Green Roll-back 43–5346–01–27–5391/43–020429/# 27–1994," provided in pertinent part:

> As a result of your selling off .21 acre of land from the above referenced property, .21 acre is no longer eligible for a Clean and Green assessment and has been removed from the program.
>
> . . . .
>
> This decision may be appealed to the [Board] within 40 calendar days from the date of this notice.

Exhibit No. 2; R.R. 35a–36a.

In response to Taxpayers' contention, the Board claims that the Assessment Office's February 27, 2002 notice complied with Section 3(d)(2) of the Act in that it constituted written notice of the roll-back from the county assessor to Taxpayers and advised them that the roll-back decision could be appealed to the Board within 40 calendar days of the notice. The Board asserts that the notice of right to appeal provided Taxpayers with an opportunity for a hearing as required by both Section 3(2)(d) of the Act and Section 553 of the Local Agency Law.

As reflected by the record, Taxpayers did request a hearing and by letter dated April 29, 2002, the Board advised Taxpayers as follows: "This is to notify you that Monday, May 20, 2002, at 1:30 PM has been set as the date and time for a hearing

on the Clean and Green Rollback Assessment Appeal on the above-referenced parcel." Exhibit No. 3; R.R. 37a. Following the hearing, by letter dated June 18, 2002, captioned "Re: Final Notice for 43–5346–01–27–5391," the Board notified Taxpayers: "As a result of the evidence presented at a hearing held on Monday, May 20, 2002, the [Board] decided to uphold the Clean and Green Rollback." Exhibit No. 4; R.R. 38a.

The Board further asserts that our decision in *City of Philadelphia* does not require a pre-notice hearing in assessment cases. We agree. As reflected by the February 27, 2002 notice, Taxpayers were given notice of the roll-back and a right to appeal the roll-back, which included an evidentiary hearing before a *final* determination on the roll-back was made.

It was not until June 18, 2002 that the Board made a *final* determination, based upon the evidence presented at the hearing, that it would uphold the roll-back. Consequently, Taxpayers were not deprived of any property right prior to the May 20, 2002 hearing. *Contrast City of Philadelphia* (licensee's City licenses were revoked several months prior to the hearing).[2] As a result, we conclude that the procedure followed by the Assessment Office and the Board in this case satisfied the due process requirements of both Section 3(d)(2) of the Act and Section 553 of the Local Agency Law.

## II.

■ Taxpayers' second argument is that their conveyance of the .21–acre tract to the Lowreys fell within the exception to the roll-back penalty enunciated in Section 6(a.1)(1)(i) of the Act, 72 P.S. § 5490.6(a.1)(1)(i), which provides:

(a.1)(1) The split-off of a part of land which is subject to preferential assessment under this act shall subject the land so split-off and the entire tract from which the land was split off to roll-back taxes as set forth in [Section 5.1 of the Act, 72 P.S. § 5490.5a][ [3] ]. The landowner changing the use of the land to one inconsistent with this act shall be liable for payment of roll-back taxes. The landowner of land which continues to be eligible for preferential assessment shall not be liable for any roll-back taxes triggered as a result of a change to an ineligible use by the owner of the split-off tract. Roll-back taxes under section 5.1 shall not be due if one of the following provisions applies:

(i) The tract split off does not exceed two acres annually, except that a maximum of the minimum residential lot size requirement annually may be split off if the property is situated in a local government unit which requires a minimum residential lot size of two to three acres; the tract split off is used only for agricultural use, agricultural reserve or forest reserve or for the construction of a residential dwelling to be occupied by the person to whom the land is conveyed; and the total tract or tracts so split off do not exceed the lesser of ten acres or ten percent (10%) of the entire tract subject to preferential assessment.

72 P.S. § 5490.6(a.1)(1)(i) (footnote added).

The Board does not dispute that Taxpayers' conveyance of the .21–acre tract

---

2. The Board notes in its brief that it would be impossible, due to its budgetary and financial constraints, to provide a hearing before it issues notice letters in all Clean and Green roll-back cases. Inasmuch as we have determined that Taxpayers were afforded both notice of the roll-back and an evidentiary hearing before the roll-back became effective, we find no violations of the due process requirements of either the Act or the Local Agency Law.

3. Section 5.1 of the Act was added by the Act of December 21, 1998, P.L. 1225.

fell within the exception set forth in Section 6(a.1)(1)(i) of the Act. As a result, Taxpayers' remaining 42–plus–acre tract of land remains entitled to the preferential assessment under the Act.

However, the Board contends that roll-back taxes were properly imposed on Taxpayers with regard to the .21–acre tract conveyed by deed to the Lowreys. We agree. Nothing in the language of Section 6(a.1)(1)(i) of the Act indicates that a split-off tract is also entitled to keep its preferential assessment under the Act.

Rather, Section 6(a.1)(2) clearly provides: *"Each tract which has been split off under paragraph 1(i) shall be subject to roll-back taxes* for such a period of time as provided in section 5 .1. The landowner changing the use of land shall be liable for payment of the roll-back taxes." 72 P.S. § 5490.6(a.1)(2) (emphasis added). Further, the Department of Agriculture's regulation found at 7 Pa.Code § 137b.82, provides that "[w]hen a split-off tract meets the following criteria, which are set forth in [Section 6(a.1)(1)(i) of the Act], *roll-back taxes are only due with respect to the split-off tract, and are not due with respect to the remainder* ...." (Emphasis added.)

Moreover, a related regulation found at 7 Pa.Code § 137b.83 provides in relevant part that "[i]f enrolled land undergoes split-off and the tract that is split-off meets the size, use and aggregate acreage requirements in [Section 6(a.1)(1)(i) of the Act], the landowner who conducted the split-off shall owe roll-back taxes and interest with respect to the split-off tract. *The preferential assessment of that split-off tract shall be terminated.*" (Emphasis added.)

Taxpayers argue that 7 Pa.Code §§ 137b.82 and 137b.83 are inconsistent with Section 6(a.1)(1)(i) of the Act. Upon reviewing Section 6 of the Act in its entirety, we believe that Taxpayers' contention

rings hollow. In contrast to a split-off, which is governed by Section 6(a.1), a landowner may "separate" land subject to a preferential assessment pursuant to Section 6(a.2) of the Act, 72 P.S. § 5490.6(a.2). If a division of land meets the requirements for a separation under Section 6(a.2), all tracts formed by the separation shall continue to receive preferential assessment.

A separation, however, is distinct from a split-off, as indicated by their respective definitions in the Act. Section 2 defines a separation as:

> A division, by conveyance or other action of the owner, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act, into two or more tracts of land, the use of which continues to be agricultural use, agricultural reserve or forest service and *all tracts so formed meet the requirements of [Section 3 of the Act, 72 P.S. § 5490.3].* (Footnote omitted, emphasis added.)

Section 2 of the Act, 72 P.S. § 5490.2. In contrast, Section 2 defines a split-off as:

> A division, by conveyance or other action of the owner, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, the use of which on one or more of such tracts *does not meet the requirements of [Section 3 of the Act].* (Emphasis added.)

*Id.*

As discussed above, the Act and related regulations treat a split-off differently from a separation. Pursuant to Section 6(a.1)(2), a split-off cannot keep its preferential assessment. Therefore, we reject Taxpayers' contention that the correct interpretation of Section 6(a.1)(1)(i) man-

dates that the split-off tract, as well as the remaining tract, keep its preferential assessment.

### III.

Taxpayers' third argument is that their conveyance of the .21–acres to the Lowreys alternatively qualifies as a separation under the Act and that, therefore, the .21–acre tract must remain eligible for preferential assessment. Taxpayers point out that the Lowreys purchased the tract for the purpose of annexing it into a tract of land they own which is already entitled to preferential treatment under the Act.

In *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504 (Pa. Cmwlth.1998), we determined that even though the preferential use of the land may remain the same, when ownership of land enrolled in the preferential assessment program is divided into two or more tracts, the conveyance is a split-off if it does not meet the ten-acre requirement in Section 3(a) of the Act, 72 P.S. § 5490.3(a) (land devoted to agricultural use, agricultural reserve or forest reserve must not be less than ten contiguous acres in area). In *Feick*, the landowner transferred 56.3 acres to the Berks County Conservatory for use as forest reserve while retaining possession of a 3.279 acre tract. As a result, the division constituted a split-off rather than a separation.

Furthermore, in *Feick* we rejected the appellant's contention that he should be allowed to include his neighbor's land in order to meet the ten-acre requirement for a separation. Specifically, we stated:

The term "contiguous" cannot be read to permit a landowner to include the acreage of an adjacent landowner in satisfying the ten-acre requirement as argued by Appellant. To do so would vitiate the General Assembly's intent with regard to the ten-acre requirement.

The ten-acre requirement achieves two legislative objectives. First, the General Assembly used its discretion in determining that a minimum of ten acres are required before a tract can be said to serve as useful forest reserve. Second, the ten-acre requirement serves to minimize the burden imposed on county taxing authorities which must administer the clean and green program. *Allowing Appellant to tack on a neighbor's acreage to reach the ten-acre plateau would admittedly further the Act's primary purpose of maximizing the amount of private acreage maintained as a forest reserve. However, permitting tacking would produce fragmented tracts and thus undermine the administrative manageability facet inherent in the Act's minimum acreage requirement for qualification of preferential assessment.*

720 A.2d at 508 (footnotes omitted, emphasis added).

Hence, in upholding the roll-back in *Feick* we noted that although the result appeared harsh insomuch as the larger 53.6 acre tract was conveyed to the Conservatory in order to insure that it remained a forest reserve, the Court had no choice "given the manner in which the General Assembly chose to balance the conservation and administrative manageability objectives of the Act." *Id.* at 509. In accordance with *Feick*, we conclude in the present case that the .21–acre tract constitutes a split-off. As such, it subject to roll-back taxes under Section 6(a.1)(2).

Despite *Feick*, Taxpayers assert that the present case is controlled by our decision in *Moyer v. Berks County Board of Assessment Appeals*, 803 A.2d 833 (Pa. Cmwlth.), *appeal denied*, 571 Pa. 711, 812 A.2d 1232 (2002). In *Moyer*, we concluded that the annexation of 2.789–acre parcel from one farm (Moyer farm) to another

(Christman farm), both of which were owned by Ray and Clara Moyer, constituted a separation rather than a split-off. In reversing the Board's determination that the annexation constituted a split-off, this Court reasoned:

> The Board treats the 2.789 acre parcel as a separate parcel, a conclusion not supported by the record. As dawn broke on July 5, 2000, the 2.789 acre parcel was part of the Moyer Farm, and then at some moment later that day, when the new Christman Farm deed was recorded, it became part of the Christman Farm. It never had a separate existence. The 2.789 acre parcel was never separately assessed; it was never given a separate tax parcel number; it never existed in the subdivision plan as a separate parcel.

> Thus, it is inescapable that neither the subdivision plan nor the revision of the boundary between the Moyer and Christman Farms "formed" a tract of 2.789 acres. The two tracts "so formed" by the division were a somewhat smaller Moyer Farm and a somewhat larger Christman Farm, each exceeding ten acres. Thus we hold that the transaction meets the statutory definition of separation set forth in Section 2 of the [Act].

*Id.* at 838 (footnote omitted).

In short, we concluded in *Moyer* that a separate tract of land was not created by the change in boundary lines between the two farms owned by the Moyers. The Director of the Assessment Office testified that both farms exceeded ten acres, that both farms continued to be owned exclu-sively by the Moyers and that the 2.789–acre parcel was *never a separately existing tract.*

The circumstances in the case *sub judice* are factually distinguishable from those in *Moyer.* As reflected by the deed, the transfer of the .21–acre tract from Taxpayers to a third party, i.e., the Lowreys, did create the existence of a separate smaller tract of land no longer owned by Taxpayers. Even though the deed indicated that the Lowreys acquired the property for the purpose of annexing it into a larger contiguous parcel already preferentially assessed under the Act, the conveyance nonetheless subdivided Taxpayers' property. Inasmuch as the .21–acre tract does not meet the acreage requirement in Section 3(a) of the Act, it must be considered a split-off rather than a separation. *Feick.*

We also note that at oral argument, Taxpayers brought to our attention our recent decision in the case of *In re Appeal of Martin,* 830 A.2d 616 (Pa.Cmwlth.2003). Upon reviewing *Martin,* we do not find it to be applicable to the present case.[4]

In view of the foregoing, we conclude that the trial court neither erred nor abused its discretion in upholding the roll-back. Accordingly, we affirm.

### ORDER

AND NOW, this 30th day of December, 2003, the April 3, 2003 order of the Court of Common Pleas of Berks County is AFFIRMED.

---

4. In *Martin,* we determined that for purposes of calculating the amount of a roll-back penalty when there is a subsequent change in use within seven years of a separation (*see* Section 6(a.2) of the Act), the term "entire tract," which is undefined in the Act, included the original 63–acre tract from which a 14–acre tract, that was later subdivided, was separated. The owner of the 14–acre tract conveyed a 2–acre tract approximately nine months after the separation, well within the seven-year period.