**Ollar v. Berks County Bd. of Assessment Appeals**

*Henry M. Koch Jr.*, for appellant.

*Gregory A. Shantz*, for appellee.

LASH, *J.*, March 23, 2011—The appellant, Isadore Ollar (hereinafter "landowner"), has appealed the decision of the Berks County Board of Assessment Appeals (hereinafter "board") directing a rollback from the preferential use assessment to full market value assessment of one (1) acre of real estate owned by landowner, pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act 319), commonly known as the Clean and Green Act, 72 P.S. § 5490.1, et seq., (hereinafter "Clean and Green Act"). In removing the one (1) acre from Clean and Green preferential status, the board found that landowner was engaged in a rural enterprise on the premises. A non-jury trial was held on March 17, 2011.

This court enters the following findings of fact:

## I. FINDINGS OF FACT

1. The appellant, Isadore Ollar (hereinafter "landowner"), is an adult individual with a mailing address of P.O. Box 125, Miller Lane, Oley, Berks County, Pennsylvania 19547-0125.

2. The appellee, Berks County Board of Assessment Appeals (hereinafter "board"), is an agency of the County of Berks, with a principal place of business located in the Berks County Services Center, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

3. Landowner is the owner of real estate consisting of 13.16 acres of farmland located at 32 Miller Lane, Alsace Township, Oley School District, Berks County, Pennsylvania (hereinafter "subject property"). The parcel number for the subject property is 22-5328-02-78-1091.

4. The parcel is improved with a mobile home and other

outbuildings, including a lean-to style outbuilding to house farming equipment, barns, and a grain drying facility.

5. The subject property was accepted and enrolled into the Berks County Clean and Green program in 1994 and has remained in that program ever since.

6. Landowner utilizes the subject property for farming and as the base of his farming operations. In addition to the subject property, landowner leases and farms approximately 1,200 acres, 600 acres in Berks County and 600 acres in Northampton County.

7. Landowner owns several large farming equipment vehicles which, when not in use, are stored on the subject property. Landowner also owns several trucks used for transportation, including tractor trailers, flatbeds, and lowboys. The trucks were purchased and are used in landowner's farming business to, among other things, transport fertilizer, seed, and other materials to the farming sites, deliver harvesting product to the grain bins on the subject property or elsewhere, and transport large farming equipment from one farming site to another.

8. Landowner's farming operations consists of the growing of soybeans, corn, and wheat.

9. On occasion, which landowner estimates to be approximately fifteen (15) times a year, landowner assists neighboring farm owners, with whom he is acquainted, in their transportation needs. He is compensated for his out-of-pocket expenses, plus seventy-five dollars ($75.00) for his time.

10. Landowner's intentions in purchasing the trucks were for the aforesaid use in his farming business. He

did not purchase them to engage in a trucking business. He does not solicit, nor accept trucking business from the general public, nor advertise.

11. On or about June 8, 2010, the Berks County Assessment Office sent a notice to landowner setting forth that they found a "rural enterprise" on the subject property. As a result of this finding, the assessment office removed one (1) acre of land from the Clean and Green program, which thereby increased the assessment on the subject property by nineteen hundred dollars ($1,900.00) per year. Additionally, a rollback penalty was assessed in the amount of four hundred forty-five dollars and ninety-four cents ($445.94).

12. On or about June 30, 2010, the Berks County Assessment Office sent a "Corrected Change Notice" to landowner, regarding a July 2010 split assessment, setting forth that the Clean and Green assessment was now one hundred seventy-two thousand three hundred dollars ($172,300.00), and the full market value assessment was two hundred six thousand six hundred dollars ($206,600.00).

13. On or about July 16, 2010, landowner filed an appeal of the assessment office notice to the board, contesting the removal of one (1) acre from clean and green.

14. On August 5, 2010, landowner appealed the July 2010 split assessment to the board.

15. The board held a hearing on September 20, 2010. By notice dated October 5, 2010, the board notified landowner that the appeals had been denied.

16. On November 3, 2010, landowner filed the within

appeal to common pleas court.

17. On February 14, 2011, this court ordered that the appeal from the board's decision removing the one acre. from the Clean and Green program shall be tried separately from the split assessment.

## II. DISCUSSION

The question before this court is whether landowner's use of his trucks for purposes other than his farming operation is an engagement in rural enterprises.

The Clean and Green Act is designed to preserve the natural resource of agricultural and forestry land. This is accomplished by providing incentives through a reduction of the property tax, motivating the landowner to ignore whatever development value the land may have, and preserve the land in its current state. *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504, 506-507 (Pa. Cmwlth. 1998).

By enrolling his tract of land into the Clean and Green program, a landowner receives the preferential assessment so long as the tract meets the minimum requirements for eligibility which, among other things, requires that the tract of land be used for agricultural use, agricultural reserve, or forest reserve purposes. However, if the landowner obtains preferential assessment but then uses the land for a purpose not eligible under the Clean and Green Act, the Clean and Green Act requires that the land be removed from the program and the entire tract be subject to rollback taxes.[1]

---

1. 72 P.S. § 5490.5(a).

A rural enterprise is not an eligible use under the Clean and Green Act and, therefore, its presence on enrolled land would normally subject the entire land to removal and rollback taxes. However, the general assembly determined that some rural enterprises are sufficiently small in scope, such that their presence would not impact or adversely affect the preservation of the land, and therefore, the rollback penalty should be limited to the actual acreage affected. Accordingly, in § 5490.8(d) of the act,[2] the general assembly provided that a landowner may apply a maximum of two (2) acres of a tract of land subject to preferential assessment toward a "rural enterprise incidental to the operational unit without subjecting the entire tract to roll-back taxes," provided that:

> (ii) An assessment of the inventory of the goods involved verifies that it is owned by the landowner or his beneficiaries.

> (iii) The rural enterprise does not permanently render the land incapable of producing an agricultural commodity.

> (2) Roll-back taxes shall be imposed upon that portion of the tract where the commercial activity takes place and the fair market value of that tract shall be adjusted accordingly.

In the within matter, the board determined that landowner was engaged in a rural enterprise, namely, a trucking operation. The board presented evidence, including the presence of "Ollar Trucking" listings on

---

2. 72 P.S. § 5490.8(d).

department of transportation documentation and painted on landowner's tractors, a personal listing in the phonebook, and a "penguin" logo on a trailer advertising a separate business. Most important was landowner's own admission that goods were being transported for third parties. The board did determine that the trucking operation was limited in scope to one (1) acre and, therefore, limited the penalty to removal of the one (1) acre, plus the rollback taxes, for that acre.

Landowner testified that he does not and has not conducted a trucking business and has no interest in doing so. He owns several trucks, which he purchased for the use of his farming operation. While, as stated, he has used the trucks to transport property of his neighbors, he does so simply to provide assistance to them and is not engaged in making a profit. For his efforts, landowner receives his out-of-pocket expenses and seventy-five dollars ($75.00) per trip, nothing more. He has never solicited trucking business, nor advertised his availability to provide trucking services.

Landowner disputes the board's categorization of the evidence. He agrees that his name does appear in the phonebook, however, this is his personal number. In fact, until this matter arose, he had believed that his phone number was unlisted. The penguin logo, appearing on one of his trailers, was present on the trailer when he purchased it and was never removed. He has no relationship with the company owning the logo. He has the name "Ollar Trucking" painted on his tractors, but this simply denotes that he does trucking within his farming operation, and was not meant to hold himself out as conducting a trucking

business.

The Clean and Green Act does not provide a definition for "rural enterprise." The dictionary definition of "enterprise" is "a unit of economic organization or activity; esp: a business organization."[3] Enterprise can generally be described as an entity organized and existing to fulfill a specific economic purpose, usually a business purpose.

We find that landowner is not in the trucking business. Landowner's activities performed for his neighbors do not constitute engaging in a rural enterprise, rather it constitutes "lending a helping hand." Simply put, landowner is doing nothing more than performing a favor for his neighbors. This is evidenced by landowner's testimony, which this court accepts as true, his refusal to accept trucking business from the general public, and the de minimis compensation he receives for his trips, which does not begin to address his time investment, nor the wear and tear on his vehicles.

We enter the following order:

## ORDER

And now, March 23, 2011, after a de novo trial held, this court sustains the appeal of the appellant, Isadore Ollar. The decision of the Berks County Board of Assessment Appeals is reversed. The entire 13.1 acres, previously enrolled in the Berks County Clean and Green program, shall remain enrolled, and no rollback taxes shall be assessed.

---

3. *Webster's Ninth New Collegian Dictionary* (1984) at p. 415.