OPINION BY
JUDGE McCULLOUGH
Northampton County (County) appeals from the July 2, 2015 order of the Court of Common Pleas of Northampton County (trial court), which reversed the County Revenue Appeals Board’s (Board) October 22, 2014 decision imposing rollback taxes on Anthony Maula (Maula) pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act).[1]
Facts and Procedural History
Maula owned a -contiguous tract of land comprised of three parcels which were enrolled into the Act’s Clean and Green preferential tax program; Parcels A, B, and C. After nonpayment of outstanding property taxes on the smallest parcel, Parcel C, in the amount of $266.12, the County sold Parcel C at a tax sale. Thereafter, the County, claiming that the tax sale was a “split-off’ as defined by the Act, changed the tax assessment of the entire tract and imposed roll-back taxes on the same. The parties submitted a joint stipulation of facts summarizing the relevant facts as follows:
’ 1. [Maula] is the former owner of a “contiguous tract” of land, as the term is defined by Section [2] of the [Act], located on Jacoby Run Road in Upper Mt. Bethel Township.
2. The parcels of the contiguous tract have separate ID numbers as follows:
(a) Parcel ID #C11 9 11A 0131 (26.7 acres) (“Parcel A”)
(b) Parcel ID #C11 9 11B 0131 (55.2 acres) (“Parcel B”); and •
'(c) Parcel ID #011 9 11C 013Í (2.88 acres) (“Parcel C”).
3. On April 22, 2009, [Maula] enrolled the entire contiguous tract (Parcels A, B and C) for preferential assessment under [the Act]. •
4. Parcel C consists of 2.88 acres and is used as a detention basin.
5. [Maula] failed to pay real estáte taxes on Parcel C for the years 2011, 2012 and 2013.
6. On or about July 22, 2013 and multiple times thereafter, [Maula] was notified by the [County] Tax Claim Bureau that if he failed to pay taxes- due and owing on Parcel C in the amount of = $266.12, Parcel C would be sold at the September 24,2013 tax-upset sale.
- 7. [Maula] failed to pay back taxes in the amount of $266.12 and therefore Parcel C was sold at the subsequent tax sale.
8. On March 21, 2014, pursuant to the tax sale, the [County] conveyed title to Parcel C to Romany Investments, LLC.
9. On June 13, 2014, [Maula] sold Parcel •A to Patricia Setar.
*444 10. [Maula] retained title to Parcel B only. Parcel B is a 55.2 acre parcel classified by [the County] as agricultural, rural land, vacant over 10 acres.
11. On or about July 11, 2014, the County Assessment Office learned that Parcel C had been conveyed to a third party; pursuant thereto the County Assessment Office provided [Maula] notice of rollback taxes due and owing for Parcels A, B and C.
12. On August 5, 2014, the [County] Division of Assessment notified [Maula] of a change of assessment for Parcels A, B and C. The prior assessment for Parcel B was $3,200.00 and the new assessment was $111,100.00.
13. The basis for the change in assessment on the August 5, 2014 notification was the statement “Take Out of [the Act]”. The Division of Assessment provided no additional explanation for the termination of the preferential assessment for Parcel B.
14. [Maula] filed a timely appeal of the change of assessment to the [Board].
15. The Board convened a hearing on the appeal on October 21, 2014.
16. The Board determined by way of a written decision dated October 22, 2014 that it would not change the assessment.
(Reproduced Record (R.R.) at 42a-44a) (internal citations omitted).
Maula appealed the Board’s determination to the trial court, which reversed the Board and reasoned that:
Because the tax-upset sale and subsequent conveyance of Parcel C upon which [the County Division of Assessment] rested its decision to terminate the contiguous tract’s preferential assessment and to impose roll-back taxes does not meet the definition of a “split-off’ as contained in [the Act], [Maula] is not liable for roll-back taxes and the Board erred in failing to reverse [the County Division of Assessment’s] decision to remove [Maula’s] parcel from [the Act’s] preferential treatment and to impose roll-back taxes.
(R.R. at 99a-100a.)
The County appealed the trial court’s decision to this Court,[2] arguing that Maula’s failure to pay real estate taxes on Parcel C, which led to the conveyance of the same at a subsequent tax sale, constituted “other action of the owner” pursuant to the Act’s definition of a “split-off.” The County further argues that Maula’s impermissible split-off renders each of the parcels subject to roll-back taxes.
Conversely, Maula argues that his failure to pay taxes was not “other action of the owner” sufficient to constitute a split-off. According to Maula, he is not liable for roll-back taxes on any of the parcels because he did not conduct a “split-off.”
Discussion
The Act established a land conservation program, commonly known as the Clean and Green program, which was designed to:
protect a landowner from being forced to cease agricultural development or sell a portion of ... land in order to pay unusually high taxes and to assure landowners that their land would not be assessed at the same rate as adjacent property under pressure to be developed and not enrolled in the program by ignoring the development value of land for *445 tax purposes and encouraging landowners to preserve the land in its current state.
Sher v. Berks County Board of Assessment Appeals, 940 A.2d 629, 631 n.2 (Pa. Cmwlth. 2008) (internal quotations omitted).
To encourage conservation, the Clean and Green program “provides a lower tax rate appropriate for land devoted to farming and forest reserve purposes.” Feick v. Berks County Board of Assessment Appeals, 720 A.2d 504, 505 (Pa. Cmwlth. 1998).
A landowner who participates in the Clean and Green program may be subject to roll-back taxes if he “conducts the split-off’ of the land.' 72 P.S. § 5490.6(a.l)(l). Specifically, section 6 of the Act states that:
The split-off of a part of land which is subject to preferential assessment under this act shall subject the land so split off and the entire tract from which the land was split off to roll-back taxes as set forth in section 5.1,[3] except as provided in this subsection. The landowner who conducts the split-off shall be liable for payment of roll-back taxes_
Id. (emphasis added).
It is1 clear from this language that á landowner is liable for roll-back taxes if he “conducts” the split-off. “Conduct” is defined as “to direct or take part in the operation or management' of; to direct the performance of; ... to cause (oneself) to act or behave in a particular and esp. in a controlled manner[.]” Mereiam-webster’s Collegiate Dictionary 240 (10th ed. 2001).
Section 2 of the Act requires “a division, by conveyance or other action of the owner,” and defines a “split-off” as:
A division, by conveyance or other action of the oumer, of lands devoted to agricultural use, agricultural reserve or forest reserve and preferentially assessed under the provisions of this act into two or more tracts of land, the use of which on one or more of such tracts does not meet the requirements of section 3.[4]
72 P.S. § 5490.2 (emphasis added).
It is undisputed that Maula did not convey Parcel C. Therefore, the pertinent inquiry before this Court is whether Mau-la’s failure to pay real estate taxes constituted “other action of the owner.” While it is clear that the failure to pay taxes was not a “conveyance,” the County argues that the failure to pay taxes was “other action of the owner” because the County’s Tax Claim Bureau could then conduct a sheriffs sale, which it did, and thereby conveyed title to Parcel C to a third-party purchaser. The County argues that Mau-la’s failure to pay taxes, his “inaction,” directly caused the “split-off.” Maula contends that this argument is inconsistent with the plain meaning of the Act, which requires a “conveyance or other action of the owner.” Maula further contends that the County cannot argue that his failure to pay taxes was the direct 'cause of the split-off because the' Act explicitly requires “other action” on the part of the landowner, not inaction. We agree.
Although Maula’s nonpayment of taxes, his alleged “other action,” may have provided a legal basis for the tax sale, this “other action” did not, in and of itself, create a conveyance or a “split-off.” The Act is clear that roll-back taxes shall be imposed only when it is the “landowner who conducts the split-off.” 72 P.S. § 5490.6(a.l)(l) (emphasis a'ddédj. As Mau- *446 la .correctly argues, the sale of Parcel C at an upset tax sale did not constitute an impermissible split-off because it was not a division of a larger tract “by conveyance or other action of the owner.” It is clear that in such a scenario it was the Tax Claim Bureau which acted to cause the conveyance. The County conveyed Parcel C, as trustee grantor, to the successful purchaser in fee simple in accordance with the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.
The Statutory Construction Act of 1972 provides that “[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.” 1 Pa.C.S. § 1921(a). Moreover, “[w]hen the words of a statute áre clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.”[5] 1 Pa. C.S § 1921(b).
The definition of “split-off’ is clear and free of any ambiguity. A “split-off” requires a “conveyance or other action of the owner.” 72 P.S. § 5490.2. Here, the County would impose liability for the result of a landowner’s internal thought processes, i,e., ignoring tax notices or deciding not to pay outstanding real estate taxes, even if the internal thought processes produced no action and even when the record lacks any findings to support such imposition.[6] It is clear that “[a] division, by conveyance or other action” by the owner means just that; it requires a conveyance or other action; 72 P.S. § 5490.2 (emphasis added).
Moreover, pursuant to the statutory construction doctrine of ejusdem gener-is (“of the same kind of class”), where general words follow specific enumerated terms, “the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.” Shire v. Workers’ Compensation Appeal Board (General Motors), 828 A.2d 441, 444 (Pa. Cmwlth. 2003) (quoting Independent Oil and Gas Association of Pennsylvania v. Board of Assessment Appeals of Fayette County, 572 Pa. 240, 814 A.2d 180, 183 (2002)). Here, the specific enumerated term is “conveyance” and the general term is “other action.” Thus, pursuant to the doctrine of ejusdem generis, “other action” must be construed as of the same general nature as “conveyance.” Clearly, a landowner’s failure to pay real estate taxes is not of the same general nature as a conveyance by the landowner. Similarly, the Act requires that the conveyance or other action be performed by the owner. In the present matter,' the conveyance was actually performed by the County via the tax sale. A tax sale is not a “conveyance or other action of the owner.” 72 P.S. § 5490.2 (emphasis added). It would be a strained statutory construction to impose .liability on a landowner for purportedly allowing a conveyance to occur when a third-party actually performs the conveyance, not the landowner. Indeed, “conveyance” is defined as “[t]he voluntary transfer of a right or of property.” Black’s Law DictionaRY *447 357 (8th ed. 2004). As the trial court aptly-noted:
[The Act] plainly implies active involvement by the landowner in the decision to voluntarily conduct a split-off. To the contrary, a landowner who passively allows a parcel subject to [the Act] to be divided from a contiguous tract, or who knowingly or unknowingly allows it to be sold at a judicial sale, cannot be said to have “conducted” or taken “action” consistent with a split-off.
(R.R. at 99a.)
Additionally, we find this Court’s decision in’ Saenger v. Berks County Board of Assessment Appeals, 732 A.2d 681 (Pa. Cmwlth. 1999), instructive. In Saenger, a landowner and her husband enrolled two parcels of property into the Clean and Green program; parcel 1 was a tract consisting of thirty-nine acres .and parcel 2 was two non-contiguous tracts measuring 17.475 acres and 3.56 acres, respectively. Subsequently, the landowner’s husband died, making her the sole owner of both parcels. Thereafter, she conveyed parcel 1 to herself and her son, James, and parcel 2 to herself and her other son, Peter. Consequently, the local assessment office'removed both parcels from the Clean and Green program because it determined that the landowner’s conveyance of the 3.56 acres parcel to Peter constituted a “split-off’ and subjected both parcels to roll-back taxes. The local appeals board affirmed the assessment office’s decision and the landowner appealed to the trial court, which affirmed the board’s decision.
On appeal to this Court, the landowner argued that a “split-off’ had not occurred because the land’s use had not changed, even though its ownership had been transferred. However, we noted that the General Assembly had amended the Act to include the current definition of a “split-off’ to address that precise situation and, citing our decision in Feick v. Berks County Board of Assessment Appeals, 720 A.2d 504 (Pa. Cmwlth. 1998), stated that if any land that was “split-off’ could not satisfy the program’s criteria, i.e., agricultural use and larger than ten acres, all of the land listed in the program’s application was subject to roll-back taxes. We reasoned that the landowner’s conveyance to Peter created a single 3.56-acre tract. Therefore, although the tract continued its agricultural use, it was less than ten acres and we held that the landowner’s conveyance constituted a “split-off’ subjecting both parcels to roll-back taxes.
We find Saenger persuasive because it delineates the General Assembly’s intent in promulgating the current definition of “split-off.” The purpose of imposing rollback taxes for a landowner who conducts a split-off is to ensure that the landowner does not benefit from the preferential tax program, subsequently divide the land or change its use, and receive a windfall for enrolling in the preferential tax program. Here, we do not believe our holding circumvents the mischief the General Assembly sought to address because Maula did not receive a windfall; rather, he was involuntarily dispossessed of his property based on $266.12 in real estate tax liability.
Conclusion
Accordingly, because Maula’s failure to pay real estate taxes was not a “conveyance or other action of the owner” as required to constitute a “split-off’ under the Act, the trial court’s order is affirmed.[7]

*448
ORDER

AND NOW, this 7th day of November, 2016, the July 2, 2015 order of the Court of Common Pleas of Northampton County is affirmed.

. Act of December 19, 1974, P.L. 973, as amended, 72 P.S. §§ 5490.1-5490.13. The Act ■ is commonly known as the Clean and Green Act.

. "This Court’s review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or reached a decision not supported by substantial evidence.” Sher v. Berks County Board of Assessment Appeals, 940 A.2d 629, 632 n.4 (Pa. Cmwlth. 2008).

. 72 P.S. § 5490.5a, added by Section 6 of the Act of December 21, 1998, P.L. 1225.

. 72 P.S. § 5490.3. .

. Although a statutory provision exempting persons and property from taxation shall be strictly construed, 1 Pa.C.S. § 1928(b)(5), this canon of construction cannot usurp the statute's plain, unambiguous language.

. However, the inadequacy of the record to support such a finding in the present matter does not foreclose the possibility that a different record may contain proof that a taxpayer intentionally chose not to pay taxes to strip himself of properly enrolled in the Clean and Green program that he no longer desired simply to avoid any potential roll-back tax liability.

. Based on the foregoing disposition, we need not address the County's argument that each of the parcels is subject to roll-back taxes.